**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
===========================================X
 **DR. JOSEPH WILSON, Ph.D.**          :  INDEX NO:
                                               **1:15-CV-00023**

                  **PLAINTIFF**
                                                   :

         vs

**THE STATE OF NEW YORK**                     :
**CITY UNIVERSITY OF NEW YORK (CUNY)**
**BROOKLYN COLLEGE (BC)**
**FREDERICK P. SCHAFFER, ESQ**. personally and as
General Counsel and Senior Vice Chancellor
for Legal Affairs, CUNY,                          :
**MARCIA ISAACSON, ESQ.**, personally and as        **THIRD AMENDED**
Senior Associate General                              **COMPLAINT**
Counsel & Chief Compliance Officer, CUNY,
**JOHN KOTOWSKI**, personally:                   :
And as Director of City Relations, CUNY;
Brooklyn College,("BC")
**KAREN L. GOULD**, President, Brooklyn College,
Personally and as President Brooklyn College,           :
**PROVOST WILLIAM A. TRAMONTANO**, personally
and as Brooklyn College Provost,
**PAMELA POLLACK, ESQ**., personally and as Director,
Legal Services, Brooklyn College, Associate Provost for
Academic Affairs                                             :
**TERRENCE CHENG**, personally and as Associate Provost,
**MICHAEL T. HEWITT, ESQ**., personally and as Director
of Human Resources**, DR. PAISLEY CURRAH, Ph.D**     :
**DR. COREY ROBIN, Ph.D., DR. MARK UNGAR, Ph.D**
**DR. JEANNE THEOHARIS, Ph.D.**
**DR. GASTON ALONSO, Ph.D**                                :
**DR. CAROLINE ARNOLD, Ph.D.**
**BARBARA HAUGSTATTER**, Secretary, (now former) Dean
**KIMBERLY PHILLIPS**, personally and as employees of     :
Brooklyn College

                                                 **JURY TRIAL**
                          **DEFENDANTS**       : **DEMANDED**
===========================================X

1

THE STATE OF NEW YORK
THE CITY UNIVERSITY OF NEW YORK (CUNY)
BROOKLYN COLLEGE (BC)
PRESIDENT KAREN L. GOULD
VICE CHANCELLOR FREDERICK P. SCHAFFER. ESQ.
MARCIA ISAACSON, ESQ.
JOHN KOTOWSKI
PROVOST WILLIAM A. TRAMONTANO
ASSOCIATE PROVOSTTERRENCE CHENG
PAMELA POLLACK, ESQ.
MICHAEL T. HEWITT, ESQ.
DR. PAISLEY CURRAH, Ph.D
DR. COREY ROBIN, Ph.D
DR. MARK UNGAR, Ph.D
DR. JEANNE THEOHARIS, Ph.D
DR. GASTON ALONSO, Ph.D
DR. CAROLINE ARNOLD, Ph.D
BARBARA HAUGSTATTER, SECRETARY
DEAN KIMBERLY PHILLIPS

Plaintiff, by his attorney, **COLIN A. MOORE, Esq**., 47 Remsen Street, 2nd

Floor, Brooklyn, NY 11201, alleges as follows for his complaint against defendants:

All causes of action are asserted, by applicable law, as relevant and necessary, against the

state, CUNY, BC, other named defendants, and the defendants as individuals, and the

defendants as employees, agents, and assigns of the state, BC, and CUNY.


## PRELIMINARY STATEMENT


This is a civil action instituted by Plaintiff, an African American Tenured Full

Professor at Brooklyn College against The City University of New York, Brooklyn

College and fifteen individual defendants, who are members of the academic staff or the

Administrative staff at CUNY and Brooklyn College. Plaintiff has instituted six causes of

action based on statutory, constitutional or common law principles.

The first cause of action alleges a violation of 42 U.S.C. 1981. The second cause

of action alleges a violation of 42 U.S.C. 1983. The third cause of action is predicated on

a violation on the common-law tort of defamation. The fourth cause of action alleges a

2

violation of the fourth amendment prohibition against unreasonable search and seizure. The fifth cause of action is based on the common-law tort of conversion.

Plaintiff seeks monitory damages in the amount of $2,000,000 based on:

- Economic loss
- Severe emotional distress
- Loss of professional reputation

Defendants, in their motion to dismiss, argued that Plaintiff's second amended complaint did not comport with FRCP 8, in that it included paragraphs and sentences that run on for multiple pages, citing paragraphs from the summary of facts, the nature of claims and the fourth cause of action. Magistrate Scanlon in her report and recommendation says that "although the court does not believe these problems warrant dismissal of the second amended complaint," she permitted a repleading of the complaint and stated that "Plaintiff must carefully prepare the third amended complaint to conform to the court's orders." The third amended complaint does indeed comport with the court's orders. It deleted in its entirety, the "summary of facts," the nature of claims and the fourth cause of action.

## THE PARTIES

1.       Plaintiff, Professor Joseph Wilson, is a tenured full professor of Political Science at Brooklyn College.  Plaintiff is a sixty-three (63) years of age male of African-American race. Plaintiff has been a Brooklyn College employee since 1986, at which time he was hired as an Assistant Professor of Political Science.  In 1988 Professor Wilson was appointed Graduate Deputy by the Political Science Department at Brooklyn College.  In 1992, Professor Wilson advanced to tenured Associate Professor of Political Science at Brooklyn College. In 1993 Professor Wilson became the founding Director of the Brooklyn College Center for Diversity and Multicultural Studies.  In approximately 1995 Professor Wilson was promoted to tenured full professor.  In 1997 plaintiff was appointed Director of the Graduate Center for Worker Education. In 1973 plaintiff was awarded his BA degree in Political Science from Columbia University.  In 1975 plaintiff

was awarded his Masters' Degree in Political Science, Columbia University.  In 1977 plaintiff was awarded an MA degree in Philosophy, Columbia University. In 1980, plaintiff was awarded his Ph.D, Political Science, Columbia University. In 1997 plaintiff was awarded an MDP Certificate (Management Development Program), Harvard University.  In 2011 the New York City Council issued a Proclamation to Professor Wilson in recognition of his life-long work promoting diversity at Brooklyn College.  Plaintiff has received numerous additional awards and has additional accomplishments including the publication of books on labor and economics.

2.      Defendant, the City University of New York, was established in 1847 and is organized pursuant to the laws of New York as the public university system of New York City.

3.      Defendant Frederick P. Schaffer, Esq., is the CUNY General Counsel and Senior Vice-Chancellor for Legal Affairs.  This Defendant heads the CUNY Law Department. The CUNY investigation of Plaintiff was conducted by his office, with the Office of Investigations under his direction.

4.      Defendant Marcia Isaacson, Esq., Senior Associate General Counsel and Chief Compliance Officer, CUNY. This Defendant is a former prosecutor.  She headed the internal Investigation by CUNY of Plaintiff.

5.       Defendant John Kotowski, Director of City Relations, CUNY.

6.       Defendant Brooklyn College is a senior college of the CUNY system, located in Brooklyn.  Brooklyn College was established in 1930.  Defendant Karen L. Gould is the President.  BC established the Graduate Center for Worker Education in approximately 1980, with an accredited and nationally acclaimed program in Urban Studies.  Students could obtain a degree in Urban Studies and a Certificate in Health Studies.

7.        Defendant Karen L. Gould is the President of Brooklyn College.  She was appointed

in 2009 by the CUNY board of trustees.  She is the highest-ranking officer at Brooklyn College.

8.        Defendant William A. Tramontano is a Provost at Brooklyn College and the Senior Vice-President for Academic Affairs.  He was named to those positions in 2008.

9.        Defendant Pamela Pollack, Esq., is the Director, Legal Services, Brooklyn College.

10.        Defendant Terrence Cheng is the Associate Provost, Academic Affairs, Brooklyn College.

11.        Defendant Dean Kimberly Phillips is the now former Dean at Brooklyn College. She was employed by Brooklyn College from approximately 2011-2013 and she reported directly to Pres. Gould.  She is now the Provost and Dean at Mills College in Oakland, California.

12.        Defendant Barbara Haugstatter is employed by Brooklyn College as a secretary in the Political Science Department.  She works for Defendant Robin who is now the Chairperson of the BC Political Science Department.

13.        Defendant Professor Paisley Currah is a tenured full Professor of Political Science at Brooklyn College.  Defendant was Chair of the Brooklyn College Political Science Department from May 2011 to May 2014.

14.        Defendant Corey Robin is a tenured full Professor of Political Science at Brooklyn College.  He was formerly Interim Director of the Graduate Center for Worker Education from approximately February 2012 to approximately February 2014.  He is

currently the Chairperson of the Brooklyn College Political Science Department.

15.     Defendant Mark Ungar is a tenured full Professor of Political Science at Brooklyn College.  Defendant was on the Appointments Committee of the Brooklyn College

16.   Defendant Jeanne Theoharis is a tenured full Professor of Political Science at Brooklyn College.  Defendant Theoharis was on the Appointments Committee of the Brooklyn College Department of Political Science.

17.   Defendant Gaston Alonso is a tenured Associate Professor at Brooklyn College.

18.   Defendant Caroline Arnold is a tenured Associate Professor at Brooklyn College.

19.   Defendants Robin, Currah, Ungar, Alonso, Theoharis, are all members of the self proclaimed "Gang of Five" at Brooklyn College.

## JURISDICTION AND VENUE

20.     This action is brought pursuant to 42 U.S.C. §§ 1981, 1983, 1985, 1988 and the Fourth, Fifth, Sixth, Ninth, Thirteenth and Fourteenth Amendments to the United States Constitution and pursuant to Article 1, §§ 1, 6, 11 and 12 of the Constitution of the State of New York.  Jurisdiction is founded upon 28 U.S.C.  §§ 1331 and 1343 and the previously mentioned statutory and constitutional provisions.

Plaintiff further invoke the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a), to hear and decide claims arising under state law that are so related to claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy.

## VENUE

Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c) in that Defendants maintain offices within this judicial district, and a substantial part of the events giving rise to this action have taken place within this judicial district.

## FACTUAL BACKGROUND

21.     There are five defendants who are self-identified in the Political Science Department as the "Gang of Five".  These Defendants are Professor Paisley Currah, Professor Corey Robin, Professor Jeanne Theoharis, Professor Mark Ungar, and Professor Gaston Alonso.   Over a period of years and continuing, the defendants who are members of the Gang of Five, who are the named defendants who are professors, Dean Kimberly Phillips, President Karen L. Gould, and other named defendants, engaged in various acts of wrongdoing, as the state, as individuals, and as employees of the state, with BC and CUNY as schools and corporate entities, and in circumstances where the defendants functioned individually and as employees of the state, and as Brooklyn College and CUNY officials and managers, in the enumerated and stated acts of wrongdoing that have resulted in the injuries sustained by plaintiff and the charges contained herein.  The defendants at various times individually and collectively and with various members of the "Gang of Five" engaged in various acts of wrongdoing.

22.     Defendant Robin stated in a Brooklyn College Political Science Department meeting, "I want to eliminate the Urban Policy Program and the Graduate Center for Worker Education.".  Defendant also stated that "Joe is going down.", and that he was going to investigate plaintiff.  Plaintiff until his firing as caused by the tortious interference and harassment and other wrongful acts of the defendants individually and collectively, was the Director of the Graduate Center for Worker Education.

23.     The current status of the academic operations of the Graduate Center for Worker Education reflects the statement made by Defendant Currah that he wanted to eliminate the Urban Policy Program and the Graduate Center for Worker Education.  The Political

Science Urban Policy MA (Master of Arts) Degree has been eliminated from the academic program of the Graduate Center for Worker Education.  During the time plaintiff was the Director of the Graduate Center for Worker Education, the student enrollment was approximately 180 students annually, and the MA degree was awarded. The current student enrollment at the Graduate Center for Worker Education is now approximately thirty-five (35) students annually.

24.     Defendants Currah and Robin, with the knowledge and support of the Gang of Five, raised plagiarism charges against plaintiff, stating that plaintiff encouraged and actually participated in a plagiarism ring with his students.

25.     Defendant Robin stated to Professor Manny Ness, and other professors: "Stay away from Joe.  Joe is going down and you'll go down with him.".  At various times from 2011-2014 Defendant Robin, with the knowledge and support of the Gang of Five, Dean Kimberly Phillips, Pres. Gould, and other defendants, engaged in various defamatory, and harassing actions against plaintiff.  Defendant Robin stated to Professor Ness: "I declare war on Joe.".

26.     In November 2011 Defendants Currah and Robin raised plagiarism charges against plaintiff's graduate students, and thereby against plaintiff for permitting and encouraging plagiarism.  These charges were made in a Political Science Department meeting attended by members of the department.  These plagiarism charges were also made by defendants to Dean Kim Phillips.  In 2011 there was an investigation into the defendants' accusations of plagiarism and no facts or evidence were found to support the accusations.  At the time defendants made these accusations, defendant Currah was the Chairperson of the Political Science Department, elected in May 2011.

27.     Defendants made defamatory accusations against plaintiff that he was changing students' grades.  In New York changing grades is a felony.

28.     Defendant Robin stated, "Joe is going down"; and in November 2011 stated to

8

Professor Manny Ness, "Joe should no longer be a professor because he is no longer interested.  He should be an entrepreneur.  I'm going to launch an investigation into Wilson.".  Defendants Currah, Robin, Gould, Phillips, and professors who were members of the Gang of Five made repeated defamatory statements against plaintiff, beginning around 2005-06, including that plaintiff was a thief, stealing tuition money, entering into secret leases at the GCWE, changing students' grades, and other false and defamatory statements.

29.     In 2011 after that statement by defendant Robin, Brooklyn College provided information to CUNY Chief Counsel the result of which was a CUNY investigation of plaintiff.  Plaintiff was then barred from teaching.

30.     In January 2012 plaintiff was fired as the Director of the Brooklyn College Graduate Center for Worker Education.  Plaintiff had served as Director for about 15 years, and in fact had worked with another BC employee and the architect to design and build the new GCWE that relocated, from 99 Hudson St., to 25 Broadway in lower Manhattan.  Plaintiff was commended by BC and CUNY officials for building a beautiful center and bringing in the project on time and within budget.

31.     In approximately January 2012 CUNY raided plaintiff's office at the GCWE.

32.     In the spring 2012 Brooklyn College filed charges against Plaintiff with the New York Attorney General.

33.     In January 2013 BC filed disciplinary charges against plaintiff to fire him as a professor.  The disciplinary charges included that plaintiff's wrongdoing as the GCWE Director made him unfit to be a professor.

34.     In October 2014, in violation of plaintiff's 1983 rights and constitutional rights including due process rights, and in violation of the ICGFFD in his CBA, and in violation of CUNY policy that requires disciplinary matters to proceed on the basis of substance,

the CUNY arbitrator issued a Final Disciplinary Hearing Report that upheld the disciplinary charges BC filed against plaintiff.  In violation of due process and 1983 rights, charges were upheld including the charges of plaintiff entering into secret leases at the GCWE, without BC knowledge or approval, even though at the Step Two disciplinary hearings defendant Pollack, Esq., testified under oath that both she and former VP Steve Little did know about, authorize and approve the GCWE leases.

35.      In 2013, after plaintiff testified before the NY City Council Committee on Higher Education, as related to state's lack of commitment to EEO/AA, plaintiff was barred from the campus of Brooklyn College.

## FIRST CAUSE OF ACTION

### Violation of Rights Secured by 42 U.S.C. §1981 and the First, Fourth and Fourteenth Amendments to the United States Constitution

36.      The plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 38 as if fully set forth herein.

37.      Defendants subjected the plaintiff, who is African-American to the foregoing conspiracies, unlawful acts and omissions, including but not limited to malice and intentional and negligent infliction of emotional harm, tortuous interference with plaintiff's CBA and his express and implied contract rights. The defendants' unlawful, punitive, and wrongful conduct included, the warrantless search of plaintiff's office and the seizure of his computer and business documents, the unjustified seizure of plaintiff's business records and conversion of his personal property by Brooklyn College, tampering with plaintiff's mail in violation with his Fourth Amendments Rights and 18 U.S.C. § 1703 and 1708; through harassment and intimidation of BC faculty and staff, BC employees including defendants Robin, Currah, and Phillips, and with the aid and support of defendants Gould, Isaacson, Pollack, Schaffer, engaging in tampering of witnesses who could testify on behalf of plaintiff thereby violating plaintiff's rights under law including his due process and equal protection rights, including attempting to alter or prevent testimony of BC faculty and staff who could be witnesses and provide testimony for plaintiff; fabrication of non-facts and defamation, as to false claims against plaintiff,

10

such as of plagiarism, changing student grades, stealing tuition money, entering into secret leases; the exculpatory testimony by defendant Pollack, Esq., at plaintiff's Step Two Disciplinary Hearings, wherein under oath defendant Pollack testified that she and former VP Finance Little did know about, approve, authorize, the entry by plaintiff into the MIM lease, and the failure of the CUNY arbitrator who is responsible for conducting the Steps One and Two of the Disciplinary Process, to include that exculpating Pollack testimony in the CUNY Final Disciplinary Hearing Report, which resulted in the MIM lease and other lease charges being presented as final charges against plaintiff in the CUNY Final Disciplinary Hearing Report issued in October 2014, with such exclusion of the exculpatory Pollack testimony at the Step Two Disciplinary Hearing violating CUNY policy and resulting in denial to plaintiff of his due process rights and other constitutional and legal rights and through that denial including denial of 1983 rights, causing the punitive and law violating acts plaintiff has suffered.

38.     From January 2012 to May 2013, plaintiff's U.S. mail, both to his office at GCWE at 25 Broadway and the Political Science Department at Brooklyn College were seized and confiscated by authorities at Brooklyn College. Madonna Charles, Mailroom Director at Brooklyn College, told plaintiff that she was instructed by Dean Phillips to seize his mail. This was a clear violation of 18 U.S.C. § 1703 and 1708, and conversion of property.  Plaintiff has asked for the return of his U.S. mail and his personal items taken during the 2012 CUNY raid on his GCWE office, with there being no return of his mail or items taken during the CUNY raid.

39.     Defendants' conspiracies, unlawful acts and wrongful conduct have caused plaintiff to be denied his equal rights under the law, including but not limited to plaintiff's rights to the full and equal benefit of all laws of proceedings for the security of persons and properties as is enjoyed by White citizens. Plaintiff was instead subjected to the punishment, pains and penalties, unlike those imposed on White citizens. Defendants acted intentionally and purposefully, without lawful justification and with a reckless disregard for the natural and probable consequences of their acts causing specific mental and emotional harm, economic injury, pain and suffering in violation of the plaintiff's

constitutional rights as guaranteed under 42 U.S.C. § 1981, 1983, and the Thirteenth and Fourteenth Amendments to the United States Constitution.

40.     As a result of Defendants' wrongful action against plaintiff, plaintiff has suffered economic injury and damage to his career prospects, irreparable emotional distress, pain and suffering, humiliation and embarrassment, loss of reputation, loss of his ability to maintain his professional status as a tenured full professor at Brooklyn College, loss of his ability to obtain an equivalent professional status at CUNY, SUNY, and other public academic institutions, in New York State or in other States, loss of his ability to obtain an equivalent academic status at private institutions of higher learning, and loss of reputation within the academic and general community.

41.     By reason of the foregoing, defendants have violated plaintiff's constitutional rights under 42 U.S.C. §1983, and 1981, and other rights under law, and plaintiff is entitled to the following relief:

   a.  Economic damages in the amount of $2,000,000.00;

   b.  Compensatory damages in an amount to be determined by the Jury;

   c.  Punitive damages in an amount to be determined by the Jury;

   d.  Attorneys' fees and expert fees in an amount, not presently capable of ascertainment;

   e.  Such other and further relief as the Court may deem just and proper.

### SECOND CAUSE OF ACTION

### Violation of Rights Secured by 42 U.S.C. § 1983 and the
### First, Fourth, and Fourteenth Amendments to the United States Constitution

42.     The plaintiff incorporates by reference the allegations set forth in Paragraph 1-44 as if fully set forth herein.

43.     Defendants under color of state law, subjected plaintiffs to the foregoing conspiracies, unlawful acts, and omissions without due process of law and in violation of U.S.C. § 1983, thereby depriving plaintiffs of rights, privileges and immunities secured by the constitution and laws, including but not limited to, those rights privileges and

immunities secured by the First, Fourth, Fifth, Sixth, Ninth and Fourteenth Amendments to the United States Constitution, including, without limitation, deprivation of the following constitutional rights, privileges and immunities.

44.    Defendants violated plaintiff's rights secured by 42 U.S.C. §1983 and 1985(3) and the Fourteenth Amendment to the United States Constitution.

45.    The defendants have engaged in a course of conduct, and otherwise conspired among and between themselves to deprive plaintiff of his constitutional rights, including but not limited to, plaintiff's rights to be not be subjected to unreasonable searches and seizures, have his rights to defend himself in any proceedings against him without the defendants engaging in witness tampering, mail tampering, loss of plaintiff's files and documents necessary to his defense, and denial of plaintiff's due process rights including rights under the Fourteenth Amendment

46.    Defendants' acted with the knowledge and purpose of depriving plaintiff who is African American of the equal protection of the laws and equal privileges and immunities under the law, and with racial animus towards the plaintiff, depriving plaintiff of his right to equal protection of the laws under the Fourteenth Amendment, and 42 U.S.C. §1983, 1981, and 1985(3).

47.     In furtherance of their unlawful acts, and conspiracies, the defendants committed the overt acts set forth in the facts of above, including, but not limited to the publication of defamatory material against plaintiff; the manufacture of knowingly false inculpatory evidence against plaintiff; the suppression of exculpatory evidence in favor of Plaintiff; the intimidation of witnesses who could testify for plaintiff, and the other unlawful acts as stated herein.

48.    As a result of defendants' wrongful conduct, punitive, unlawful, and malicious actions, plaintiff has suffered irreparable harm including economic injury, damage to his professional and personal reputations, emotional distress, pain and suffering, humiliation and embarrassment, wrongful termination and an arbitration based on violation of CUNY policy during the disciplinary hearing process, loss of his ability to maintain his

13

professional status as a tenured full professor at Brooklyn College, loss of his ability to obtain an equivalent professional status at CUNY, SUNY, and other public academic institutions, in New York State or in other States, loss of his ability to obtain an equivalent academic status at private institutions of higher learning, and loss of reputation within the academic and general community.

49.   By reason of the foregoing, defendants have violated plaintiff's constitutional rights under 42 U.S.C. §1981, and 1983, and Plaintiff is entitled to the following relief:

      a.   Economic damages in the amount of $2,000,000.00;

      b.   Compensatory damages in an amount to be determined by the Jury;

      c.   Punitive damages in an amount to be determined by the Jury;

      d.   Attorneys' fees and expert fees in an amount, not presently capable of ascertainment;

      e.   Such other and further relief as the Court may deem just and proper.

## THIRD CAUSE OF ACTION

## DEFAMATION, MALICE, AND INTENTIONAL INFLICTION OF EMOTIONAL HARM

50.   The plaintiff incorporates by reference the allegations set forth in paragraphs 1-52 as if fully set forth herein.

51.   Defendants Currah, Robin, Ungar, Theoharris and Alonso, the self-proclaimed Gang of Five, together with members of the faculty and administrative staff of Brooklyn College, including defendants President Gould and former Dean Phillips, made defamatory statements against plaintiff to ruin credibility, integrity and honesty of plaintiff. Some of these defamatory comments were disseminated in various publications, including Robin's 2014 Facebook Blog, Douglas Henwood's Facebook Blog, the New York Times Publication of January 12, 2014, The Kingsman Publication of September 2014.

52.     These defamatory statements have been published and repeated on an ongoing basis up to the present time. The following constitutes a chronology of the defamatory statements by the defendants from 2011 to the present time.

53.     Between September and October 2011, defendant Currah sent an email to plaintiff and to the BC administrators stating that tuition money (FTE's) was missing from the Graduate Center of Worker's Education, which email placed plaintiff, as GCWE Director, as the person responsible for what was theft.

54.     Defendant Currah also stated that plaintiff was improperly changing the grades of his students. These false allegations were communicated to defendant Phillips, former Dean at Brooklyn College who reported directly to President Gould. Other members of the Brooklyn College faculty and administration, including Vice President Stephen Joyner repeated these defamatory allegations.  BC students became aware of the defamation against plaintiff both while on campus and due to extensive publication of the defamation.

55.     Defendants Pollock, Gould, Phillips, Schaeffer, Robin and Currah alleged that plaintiff was entering into leases with outside groups, such as the Manhattan Institute of Management (MIM) without the consent or authorization of Brooklyn College.

56.     The defendants also accused plaintiff of colluding with students to engage in plagiarism. Defendants Currah, Robin, Phillips and Gould repeated defamatory allegations that plaintiff was a thief, was stealing tuition money, improperly changing student grades and engaging plagiarism.

57.     Defendant Phillips told the head of ESRA that "Wilson was a thief." Defendant Phillips reported these defamatory statements to Brooklyn College professors and Brooklyn College employees. Defendant Phillips, with the consent of President Gould, repeated these defamatory allegations to Brooklyn College and CUNY attorneys, officials and managers.

58.     Defendants Robin and Currah, with the consent of defendants Phillips and Gould, made defamatory statements that plaintiff was courses in an unauthorized JD/MA joint-

15

degree program with Brooklyn Law School without the consent or authorization of Brooklyn College. At the time the defendants were making these allegations, they had constructive and actual knowledge that the joint-degree program was in the BC catalogue and that BC had the records documenting that the JD/MA program with Brooklyn Law School, and that the program was authorized by Brooklyn College and was contained in the Brooklyn College catalogue.

59.    During the period of five years and continuing to the present, these defamatory statements were repeated and republished in Robin's Blog, The New York Times of January 2014, the BC student newspaper The Kingsman, and Henwood's November 2014 Facebook posting.

60.     Plaintiff, together with BC professors, including Professor Manny Ness held meetings  with defendant Hewitt, BC Director of Human Resources and Labor Relations, and Mirotznik (not a defendant), to provide extensive information about the defamation against plaintiff and the problems created by the Gang of Five in the BC Political Science Department, and asking for help from the administration to address the problems and defamation.  The administration took no action and provided no help.  That failure is also a violation of CUNY policy.

61.    In the fall of 2011, plaintiff and several BC professors sought a meeting with defendant Phillips to put an end to these defamatory statements. Defendant Phillips not only refused to take any action against the Gang of Five, she actively participated in repeating these defamatory statements.  The defendants who are officials and managers participated in the ongoing defamation of plaintiff.

62.    On March 12, 2014, Associate Provost for Academic Affairs, Terrence Cheng, told BC faculty members and Professor Jocelyn Wills and Plaintiff Wilson that "Wilson was engaging in criminal activity." Defendant Cheng repeated these defamatory statements to the Labor Arts Society, a 501(C ) (3) organization.

63.     A 2014 Facebook blog by Mr. Henwood, husband of a BC visiting professor, stated that the Graduate Center for Worker's Education (GCWE) "was run by a bunch of thieves."

64.     On March 25, 2013, a meeting was held in the offices of Assemblyman Joseph R. Lentol. Present at the meeting were Steve Leberstein, Professor Manny Ness, Eric Radezky, Chief of Staff to Assemblyman Lentol, and a former GCWE student. President Karen Gould participated in the meeting by speakerphone, and stated to the participants that "the center is being closed because Wilson was corrupt and was stealing."

65.      In March 2014, John Kotowski, a member of the Chancellory, Director of City Relations at CUNY, told NY City Councilperson Inez Baron, Chair of the Higher Education Committee of the NY City Council, to disinvite plaintiff from her installation ceremony. When she asked why, Kotowski stated that "you are aware of Professor Wilson and what is going on at the Graduate Center for Worker Education".

66.     The defamatory statements were false, and the defendants had actual and constructive knowledge of the falsity of their statements, through BC and CUNY official documents and records, and ability to corroborate and verify their statements through documents and records and as based on their access to BC and CUNY officials and managers. Defendants, including Gould, Phillips, and Hewitt, as Director of Human Resources and former Assistant Vice President of Finance, and the other defendants, had the knowledge, document access, administrative access, and ability to obtain accurate information, as relevant to their jobs and their access to the other defendants and other BC and CUNY officials and managers, had full and complete access to all of the fiscal and accounting records of Brooklyn College.  Yet the defendants, the officials and managers, the Gang of Five, continued with the ongoing, false, and defamatory statements against plaintiff, further showing malice, to harm plaintiff and to cause him to suffer punitive acts. When the Gang of Five made the false allegations that plaintiff was stealing tuition money, for example, defendants including Gould, Phillips, Hewitt remained silent, and, in violation of CUNY policy, and BC policy, including EEO/AA policies and procedures, the defendants as officials and managers, as employees, took no

17

action to help plaintiff and actually further engaged in the ongoing defamation, punitive acts, violations of law,

67.　　Defendant Pollack told defendant Isaacson, in a 2012 meeting that plaintiff and his union attorney, Pete Zwiebach, had with Pollack and Isaacson, that she and VP Finance Little did not know about or authorize the leases that plaintiff entered into with MIM.  Those false and law violating statements, and other acts and statements by the all of the defendants, and the defendants as administrators and managers, clearly demonstrated the administration's support of the defamation and wrongful acts against plaintiff and created the conditions under which the law violating acts including but not limited to the defamation were allowed and even encouraged by the individual defendants, the defendants as employees, and the defendants as the state.

68.　　On April 29, 2014, at plaintiff's Step 2 Disciplinary hearing, when questioned by plaintiff's union attorney, Zwiebach, Defendant Pollack admitted under oath that she and VP of Finance, Steve Little, did know about the MIM lease, and had in fact authorized plaintiff to enter into the lease.  This testimony under oath by Pollack is further evidence of the conspiracy against plaintiff and the official support for the unlawful and punitive acts that plaintiff was forced to endure on an ongoing basis, including the defamation and wrongful termination of plaintiff. The defendants individually and collectively, and as employees and agents of the state, demonstrated a wanton disregard for the truth, their own express and implied contractual obligations, as well as a total disregard for truth, and plaintiff's rights under law and contract, and plaintiff's civil and even human rights.  The pervasive, egregious, and ongoing wrongful and law violating acts of the defendants, individually and collectively, show active administrate/state support for what plaintiff endured.

## FOURTH CAUSE OF ACTION

## UNLAWFUL SEARCH AND SEIZURE

69  Plaintiff incorporates by reference the allegations set forth in Paragraphs 1-70 as if fully set forth herein.

70   In approximately January 2012, armed security personnel, under the supervision of defendant Isaacson, Esq., CUNY Senior Associate Counsel and Chief Investigator, conducted a warrantless search of plaintiff's office at 25 Broadway. This warrantless search was a clear violation of plaintiff's constitutional rights under the Fourth Amendment, which states in pertinent part that "the right of the people to be secured in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation."

71   In effectuating the warrantless search on the plaintiff's office, CUNY violated the law, in collusion with BC, although they clearly had the means and opportunity to get a search warrant and to notify the police.

72   CUNY knew that they did not have probable cause to obtain a warrant, since there was no probable cause to believe that professor Wilson had committed a criminal offense. Hence, the warrantless raid on Professor Wilson's office at 25 Broadway was clearly a violation of the Fourth Amendment. After CUNY security and Isaacson entered plaintiff's office, without consent from Professor Wilson, they proceeded to perpetrate another violation of his constitutional rights. They proceeded to seize his computer, his electronic files, his objects of art, historical and labor related memorabilia, books, documents, research papers, notes and records.

73   To date, Brooklyn College and the individual defendants have failed to return the confiscated property, even though Plaintiff has made numerous and repeated oral and written demands to defendants including Brooklyn College, Hewitt, Robin, who is now Chairperson of the Department of Political Science, Defendant Currah, former Dean Kimberly Philips, Barbara Haugstatter, for the return of his property.

74   Defendants' conducts was intentional, malicious and in reckless disregard of plaintiff's protected rights under 42 U.S.C. § 1981, 1983, was an act of retaliation and discrimination, and violated the Fourth Amendment.

75   As a result of defendants' wrongful actions against plaintiff, and the state's violations of plaintiff's constitutional rights, plaintiff has suffered economic

injury and damage to his career prospects, emotional distress, pain and suffering, humiliation and embarrassment, loss of reputation, loss of his ability to maintain his professional status as a tenured full professor at Brooklyn College, loss of his ability to obtain an equivalent professional status at CUNY, SUNY, and other public academic institutions, in New York State or in other States, loss of his ability to obtain an equivalent academic status at private institutions of higher learning, and loss of reputation within the academic and general community.

**76** By reason of the foregoing, defendants have violated plaintiff's civil rights under 42 U.S.C. §1981 and 42 U.S.C. § 1983, and his constitutional rights under the First, Fourth, Fifth, Sixth, Thirteenth and Fourteenth Amendments to the U.S. constitution, violated other laws and rights as stated herein, and plaintiff is entitled to the following relief:

i.   Economic damages in the amount of $2,000,000.00;

ii.  Compensatory damages in an amount to be determined by the Jury;

iii. Punitive damages in an amount to be determined by the Jury;

iv.  Attorneys' fees and expert fees in an amount, not presently capable of ascertainment;

v.   Such other and further relief as the Court may deem just and proper.

## FIFTH CAUSE OF ACTION

## CONVERSION OF PERSONAL PROPERTY

77. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1-70 as if fully set forth herein.

78. Conversion is a civil action that applies when there is the unlawful taking or use of someone's property.

79. Conversion involves the unlawful taking and use of property belonging to another.

80. In the instant case, there is indisputable evidence that defendants have taken possession of plaintiff's property without even providing him with an inventory

of the property seized, and without an admission that they have confiscated the property.

81. The defendants have refused to return plaintiff's property, even though he has made repeated oral and written requests for his property.

82. Some of this property involves irreplaceable research notes for publication, which plaintiff's needs in order to maintain his status as a tenured professor.

83. Defendants' refusal to return the property is inexcusable and unconscionable, and merits the strictest reprimand and admonition from the Court.

84. Defendants' conducts was intentional, malicious and in reckless disregard of Plaintiff's protected rights under 42 U.S.C. § 1981, and other applicable laws as stated herein.

85. As a result of defendants' wrongful actions against plaintiff, plaintiff has suffered economic injury and damage to his career prospects, irreparable emotional distress, pain and suffering, humiliation and embarrassment, loss of reputation, loss of his ability to maintain his professional status as a tenured full professor at Brooklyn College, loss of his ability to obtain an equivalent professional status at CUNY, SUNY, and other public academic institutions, in New York State or in other States, loss of his ability to obtain an equivalent academic status at private institutions of higher learning, and loss of reputation within the academic and general community.

86. By reason of the foregoing, defendants have violated plaintiff's civil rights under Title VII, the NY City and NY State Civil Rights and anti-discrimination laws, CUNY and BC policies including their EEO/AA policies, 42 U.S.C. §1981 and 42 U.S.C. § 1983, and his constitutional rights under the First, Fourth, Fifth, Sixth, Thirteenth and Fourteenth Amendments to the United States Constitution, and plaintiff is entitled to the following relief:

    i.    Economic damages in the amount of $2,000,000.00;

    ii.    Compensatory damages in an amount to be determined;

    iii.    Punitive damages in an amount to be determined;

    iv.    Attorneys' fees and expert fees in an amount, not presently capable of ascertainment;

v.      Such other and further relief as the Court may deem just and proper.


**WHEREFORE**, plaintiff demands the following relief, individually, jointly and severally; as applicable, against the corporate defendants, the individual defendants, and the individual defendants as employees, agents, and assigns of the state, Brooklyn College, and the City University of New York, as allowed by law:

   a.   Compensatory and punitive damage awards each in separate amounts of $2,000,000.00 for each of the eight causes of action as specified herein, or such greater amounts as may be set by law and by a jury;

   b.   A preliminary injunction with temporary restraining order enjoining the defendants from proceeding with disciplinary actions against the plaintiff during the pendency of this lawsuit, and returning all of the mail and personal property, confiscated from plaintiff since January 2013;

   c.   A court order pursuant to 42 U.S.C. 1988, that plaintiff is entitled to the costs involved in maintaining this action and attorney's fees;

   d.   Such other and further relief as this court may deem just and proper.

## DEMAND FOR JURY TRIAL

A jury trial is hereby demanded on each and every one of the claims herein, as allowed by law.


Dated:  Brooklyn, New York
        March 27, 2017



BY: _____//s//_____
           COLIN A. MOORE, ESQ.
           47 Remsen Street, 2nd Floor
           Brooklyn, New York 11201
           Telephone: 718-643-1214


22