UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x
DR. JOSEPH WILSON,

                Plaintiff,

     -against-


THE STATE OF NEW YORK, CITY
UNIVERSITY OF NEW YORK, MARCIA
ISSACSON, JOHN KOTOWSKI, BROOKLYN
COLLEGE, KAREN GOULD, WILLIAM
TRAMONT ANO, PAMELA POLLOCK,
TERRENCE CHENG, MICHAEL HEWITT,
DR. PAISLEY CURRAH, DR. COREY ROBIN,
DR. MARK UNGER, DR. JEANNE
THEOHARRIS, DR. GASTON ALONSO, DR.
CAROLINE ARNOLD, SECRETARY
BARBARAH HAUGSTATTER, KIMBERLY
PHILLIPS,

                Defendants.
-----------------------------------------------------x

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAR 2 6 2018 ★

BROOKLYN OFFICE

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
15-CV-23 (CBA) (VMS)

**AMON, United States District Judge:**

     On January 5, 2015, Plaintiff Dr. Joseph Wilson ("Wilson") commenced this action against

the State of New York, the City University of New York ("CUNY"), Brooklyn College, and a host

of its professors and administrators following his termination from his tenured professor post at

Brooklyn College.  On January 24, 2017, upon referral by this Court, Magistrate Judge Vera M.

Scanlon issued a Report and Recommendation that recommended that this Court dismiss all of

Wilson's claims, except for claims for: (1) conversion against Defendants Currah and Isaacson;

(2) violations of the Fourth Amendment against Defendants Currah and Isaacson, and; (3)

defamation against Defendant Cheng. (D.E. # 31 ("R&R") at 69.)  Magistrate Judge Scanlon also

recommended that Wilson be given 30 days from this Court's ruling on the R&R to replead some

of the claims that she recommended be dismissed.

In the time since the R&R was issued, the procedural complexities in this case have multiplied. On April 3, 2017, after several extensions of time, Wilson filed objections to the R&R, (D.E. # 43 ("Obj.")), and a Third Amended Complaint, (D.E. # 45 ("TAC")). Defendants filed objections to the R&R, but later withdrew them after Wilson had filed his Third Amended Complaint. (D.E. # 47.) Instead of pursuing their objections, defendants requested a pre-motion conference to partially dismiss the Third Amended Complaint. (D.E. # 49.) At the conference, this Court directed defendants to file a letter brief explaining why the Third Amended Complaint should be partially dismissed. (D.E. dated June 5, 2017). Defendants subsequently filed their letter brief, arguing that the Third Amended Complaint simply recycled claims that Magistrate Judge Scanlon recommended be dismissed and two of the three claims that survived dismissal under the R&R are barred by collateral estoppel. (D.E. # 51 ("Defs. Mem.").) Defendants did not, however, contend that the Third Amended Complaint's other claim that survived the R&R—a claim for conversion of personal property—should be dismissed.

The Court has considered Wilson's objections to the R&R and the parties' submission with respect to the Third Amended Complaint. For the reasons stated below, the Court adopts the R&R as the opinion of the Court, and grants in part and denies in part defendants' motion to dismiss the TAC.

## BACKGROUND

### I.    Brief Factual Overview

Dr. Wilson was a tenured African-American professor at Brooklyn College and brought this action alleging that the college and several professors and administrators discriminated against him based upon his race and age. (D.E. # 20 ("Second Amended Complaint" or "SAC") at 2–3.) The events in this action arise principally out of a disciplinary proceeding college officials brought against Wilson concerning actions he allegedly took as the Director of the Graduate Center for

Worker Education ("GCWE"). (Id. at 7–9.) The college terminated Wilson on the grounds that he unjustly enriched himself in an amount of approximately $100,000, used CUNY funding for personal purchases, and submitted false and misleading documents to the CUNY Provost's office. (R&R at 7.) After numerous hearings pursuant to the parties' collective bargaining agreement ("CBA"), including fourteen days of hearings before a neutral arbitrator from the American Arbitral Association ("AAA"), CUNY's decision to terminate Wilson was upheld on twelve of the fifteen grounds, including the most serious charges that Wilson "destroyed the basic trust necessary to maintain the employment relationship" by "receiv[ing] additional compensation of over $100,000 to which he could not claim the right to receive." (D.E. # 51-Ex. 1 ("AAA Op.") at 49.) Wilson does not dispute the arbitrator's finding that he had a full and fair opportunity to cross-examine witnesses about whether the charges against him were fabricated to hide the college's true motive of discriminatory intent. Nor does he contend that the hearings were unfair in any other way.

Wilson contends that the charges in the disciplinary proceedings were false and that his fellow political science professors, as well as high-level administrators at CUNY, knowingly made false allegations and launched the investigation as a subterfuge so they could fire him. (SAC at 7–9.) He alleges that defendants did this because he is African-American and those determined to oust him are white. (Id. at 25.) He also alleges that under the guise of the investigation, defendants conducted an unlawful search of his office, seized his personal property located therein, made defamatory statements that he was engaging criminal activity, and caused the intentional infliction of emotional distress. (Id.)

## II.    The Report and Recommendation

Defendants moved to dismiss the Second Amended Complaint, arguing that it failed to: (1) conform to Federal Rule of Civil Procedure 8; (2) overcome sovereign immunity; (3) adequately plead claims under 42 U.S.C. §§ 1981 and 1983; (4) demonstrate that Wilson exhausted his administrative remedies before bringing his Title VII and Age Discrimination in Employment Act ("ADEA") claims; (5) allege unlawful discrimination under Title VII, the New York Human Rights Law ("NYHRL"), or the New York City Human Rights Law ("NYCHRL"); (7) allege plausible facts supporting his claim that defendants conducted an unlawful search of his office; (8) allege plausible facts supporting his common law claims for defamation, tortious interference of contract, intentional infliction of emotional distress, and conversion; and (9) demonstrate that a claim for "malice" is cognizable as a civil cause of action under New York law. (See D.E. # 30.) Defendants also argued that Wilson's claims are barred because the individual defendants are entitled to qualified immunity. (Id.) In supplemental briefing, defendants requested that Magistrate Judge Scanlon to convert their motion to dismiss to a motion for summary judgment with respect to Wilson's employment discrimination claims once the arbitrator ruled they were justified in terminating him. (D.E. # 33.)

The R&R recommended that a majority of Wilson's claims be dismissed. First, the R&R recommended that the Second Amended Complaint's claims against CUNY and its employees in their official capacity should be dismissed because, with the exception of his Title VII claim, none of the statutes Wilson sought relief under had abrogated the state's Eleventh Amendment sovereign immunity. (R&R at 12–14.) The R&R recommended that Wilson's claims against Brooklyn College be dismissed because it was not a legally cognizable entity separate from CUNY. (Id.) As for the claim-by-claim analysis, the R&R recommended that the following claims be dismissed:

4

(1) defamation against Defendants Currah, Robin, Ungar, Theoharris, Alonzo, Kotowski and Gould for either being time-barred or failing to allege a defamatory statement; (2) retaliatory conduct in violation of the First Amendment; (3) Fourteenth Amendment violation; (4) tampering with United States mail; (5) breach of contract and tortious interference; (6) employment discrimination under Title VII, ADEA, NYSHRL, and NYCHRL; (7) malice and intentional infliction of emotional distress; (8) conversion against all defendants except for Defendants Currah and Isaacson; and (9) civil rights violations under §§ 1981 and 1983 against state entities and some individual defendants. (R&R at 68−69.)

The R&R recommended that this Court deny defendants' motion with respect to three claims against a limited set of defendants. Those claims are for: (1) conversion against Defendants Currah and Isaacson; (2) violations of his Fourth Amendment rights against Defendants Currah and Isaacson, and; (3) defamation against Defendant Cheng. (Id. at 69.) The R&R also recommended that Wilson be given 30 days to replead his factually deficient claims in a manner consistent with this Memorandum and Order. (Id.) As for Wilson's Title VII and ADEA claims, the R&R recommended that Wilson be given leave to replead if he could demonstrate that he timely exhausted his administrative remedies while also addressing the deficiencies of the factual allegations identified by the R&R. (Id.) Lastly, with respect to Wilson's common law claims and claims under the NYSHRL, NYCHRL, and § 1983, the R&R recommended that he be given leave to replead if he could remedy the deficiencies of the factual allegations identified by the R&R. (Id.)

### III.    The Third Amended Complaint

Although the R&R recommended Wilson be given leave to replead his factually deficient claims within 30 days of this Court's ruling on the R&R, Wilson filed his Third Amended

Complaint on April 3, 2017, before this Court had the opportunity to review the R&R. The Third Amended Complaint re-alleges the three claims sustained by the R&R for violation of the Fourth Amendment's prohibition against unlawful searches and for conversion of personal property against Currah and Isaacson, and defamation against Cheng. (TAC ¶¶ 70, 80, 57.) It also re-pleads the following claims against the other defendants that the R&R deemed legally or factually deficient: (1) claims under § 1981 for violations of the First and Fourteenth Amendments, (id. ¶¶ 36–41); (2) claims under § 1983 for violations of the First, Fourth, and Fourteenth Amendments, (id. ¶¶ 42–49); (3) common law claims for defamation, malice, and intentional infliction of emotional distress, (id. ¶¶ 50–68) and; (4) conversion, (id. ¶¶ 77–84). The Third Amended Complaint removed express causes of action for tampering with mail, employment discrimination under federal, state, and city law, and tortious interference with contract. However, Wilson did not remove all references to his employment discrimination claims as the Third Amended Complaint lumped in fleeting references to "Title VII, the NY City and NY State . . . anti-discrimination laws" in its last paragraph. (Id. ¶ 86.)

Notwithstanding Magistrate Judge Scanlon's instruction to remedy the factual and procedural deficiencies identified in the R&R, the Third Amended Complaint makes no effort to remedy those errors. Instead, it transposes the same allegations verbatim from the Second Amended Complaint into the Third Amended Complaint. (Compare, e.g., SAC ¶ 54 ("Defendants Currah, Robin, Ungar, Theoharris and Alonso, the self-proclaimed Gang of Five, together with members of the faculty and administrative staff of Brooklyn College, including defendants President Gould and former Dean Phillips, made defamatory comments against plaintiff to ruin credibility, integrity, and honesty of plaintiff. Some of those defamatory comments were disseminated in various publications, including Robin's 2014 Facebook Blog, Douglas Henwood's

Facebook Blog, the New York Times Publication of January 12, 2014, The Kingsman Publication of September 2014."), with TAC ¶ 51 ("Defendants Currah, Robin, Ungar, Theoharris and Alonso, the self-proclaimed Gang of Five, together with members of the faculty and administrative staff of Brooklyn College, including defendants President Gould and former Dean Phillips, made defamatory comments against plaintiff to ruin credibility, integrity, and honesty of plaintiff. Some of those defamatory comments were disseminated in various publications, including Robin's 2014 Facebook Blog, Douglas Henwood's Facebook Blog, the New York Times Publication of January 12, 2014, The Kingsman Publication of September 2014.").) Indeed, Wilson expressly admitted to this Court that the Third Amended Complaint does not contain any new allegations and indeed is the "same" as the Second Amended Complaint. (D.E. # 53.)

## STANDARD OF REVIEW

To the extent that a party makes specific objections to a magistrate judge's findings, the court must make a de novo determination. See Arista Records, LLC v. Doe, 604 F.3d 110, 116 (2d Cir. 2010); Fed. R. Civ. P. 72(b). In reviewing a report and recommendation, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); see also Fed. R. Civ. P. 72(b)(3). "In this district and circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." Illis v. Artus, No. 06-CV-3077 (SLT), 2009 WL 2730870, at *1 (E.D.N.Y. Aug. 28, 2009) (quoting Sci. Components Corp. v. Sirenza Microdevices, Inc., No. 03-CV-1851 (NGG), 2006 WL 2524187, at *2 (E.D.N.Y. Aug. 30, 2006)).

## DISCUSSION

### I.     Wilson's Objections to the R&R

In light of Wilson's objections, the Court has undertaken a _de novo_ review of the full record, including the applicable law, the Second Amended Complaint, the parties' submissions, the R&R, Wilson's objections to the R&R, and defendants' submission in support of the R&R. Despite the R&R's conclusion that most of his claims should be dismissed, Wilson objects only to the dismissal of three of his claims against certain defendants, arguing that: (A) his defamation claim against Defendant Kotowski should move forward because Kotowski's statement "clearly constituted defamation by implication," (Obj. at 2); (B) his First Amendment claim against President Gould should not be dismissed because he adequately alleged her personal involvement in the college's decision to retaliate against him for his speech, (id. at 3); (C) his claims under the Fourteenth Amendment for selective enforcement should not be dismissed because the Second Amended Complaint alleged that none of his "White comparators were ever sanctioned or disciplined for ethical or criminal violations," (id.); and (D) his claim under the Fourth Amendment against Defendant Schaffer should move forward because Schaffer "authorized" the search of Wilson's office, (id. at 5).   In other words, Wilson does not object to the R&R's conclusion that most of his other claims against most defendants should be dismissed, including his claims for employment discrimination under federal, state, and city law, and almost all of his claims for defamation.  Wilson's four objections are considered in turn below.

### A. Defamation Claim Against Kotowski

Wilson brings claims under New York common law for defamation, alleging that certain statements made by Defendants Currah, Phillips, Cheng, Gould, and Kotowski damaged his career and reputation.  The R&R recommended that all of Wilson's defamation claims be dismissed on the grounds that they were not defamatory or were made outside of the one year statute of

8

limitations, except for the claim asserted against Cheng for his statement that Wilson was "engaged in criminal activities." (R&R at 64.) In his objections, Wilson challenges only the dismissal of his defamation claim against Kotowski. (Obj. at 2.) This claim is premised upon Kotowski's alleged statement to New York City Councilwoman Inez Baron that "you are aware of Professor Wilson and what is going on at the Graduate Center of Worker Education." (Obj. at 2.) For the reasons explained below, the Court rejects Wilson's objection and adopts Magistrate Judge Scanlon's R&R.

"Under New York law, a claim for defamation must allege (1) a false statement about the complainant; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on the part of the publisher; (4) that either constitutes defamation per se or caused special damages." Emmons v. City Univ. of N.Y., 715 F. Supp. 2d 394, 423 (E.D.N.Y. 2010). A defamatory statement is "one that exposes an individual 'to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation or disgrace, or . . . induce[s] an evil opinion of one in the minds of right-thinking persons, and . . . deprives one of . . . confidence and friendly intercourse in society.'" Celle v. Filipino Reporter Enters., Inc., 209 F.3d 163, 177 (2d Cir. 2000) (quoting Kimmerle v. N.Y. Evening Journal, 262 N.Y. 99, 102 (1933)). Statements that are "defamatory per se" include those that "charge[] another with a serious crime or tend[] to injure another in his or her trade, business, or profession." Konig v CSC Holdings, LLC, 977 N.Y.S.2d 756, 759 (2d Dep't 2013). "On a motion to dismiss a defamation claim, the court must decide whether the statements, considered in the context of the entire publication, are 'reasonably susceptible of a defamatory connotation,' such that the issue is worthy of submission to a jury." Stepanov v. Dow Jones & Co., 120 A.D.3d 28, 34 (1st Dep't 2014) (quoting Silsdorf v. Levine, 59 N.Y.2d 8, 12 (1983)).

As an initial matter, Wilson does not contend Kotowski's statement is per se defamatory or false. In most circumstances, this would be fatal: "[o]rdinarily, where a defamation claim—as here—does not allege a false statement, the claim must be dismissed." Goldman v. Barrett, No. 15-CV-9223 (PGG), 2016 WL 5942529, at *4 (S.D.N.Y. Aug. 24, 2016) (collecting cases). Wilson seeks to avoid this result by contending that Kotowski's statement was defamatory by implication, since the "implication was that Professor Wilson was involved in something that was criminal or unethical." (Obj. at 2.) A narrow doctrine, "'[d]efamation by implication is premised not on direct statements but on false suggestions, impressions and implications arising from otherwise truthful statements.'" Tannerite Sports, LLC v. NBCUniversal Media LLC, 135 F. Supp. 3d 219, 232 (S.D.N.Y. 2015) (quoting Armstrong v. Simon & Schuster, 85 N.Y.2d 373, 381 (1995)). A claim for defamation by implication must be based on a "'misleading omission[] or false suggestion." Krepps v. Reiner, 588 F. Supp. 2d 471, 483 (S.D.N.Y. 2008) (quoting Oluwo v. Hallum, 851 N.Y.S.2d 59 (2007)); see also Emamian v. Rockefeller Univ., No. 07-CV-3919 (DAB), 2008 WL 4443824, at *6 (S.D.N.Y. Sept. 25, 2008) (stating that defamation by implication "involves false suggestions, impressions and implications"). "'The alleged innuendo 'may not enlarge upon the meaning of words so as to convey a meaning that is not expressed.'" Biro v. Conde Nast, 883 F. Supp. 2d 441, 466 (S.D.N.Y. 2012) (quoting Tracy v. Newsday, 5 N.Y.2d 134 (1959)). "To survive a motion to dismiss a claim for defamation by implication where the factual statements at issue are substantially true, the plaintiff must make a rigorous showing that the language of the communication as a whole can be reasonably read both to impart a defamatory inference and to affirmatively suggest that the author intended or endorsed that inference." Stepanov v. Dow Jones & Co., 120 A.D.3d 28, 37–38 (1st Dep't 2014); see also Kavanagh v. Zwilling, 997 F. Supp. 2d 241, 249 (S.D.N.Y. 2014) (noting that New York courts "require an

especially rigorous showing" for defamation by implication claims in order to avoid dismissal), aff'd, 578 F. App'x 24 (2d Cir. 2014).

Given Wilson's obligation under New York law to make a "rigorous showing that the language as a whole can be reasonably read . . . to impart a defamatory inference," Tannerite Sports, LLC, 135 F. Supp. 3d at 232, his claim against Kotowski for defamation by implication cannot survive dismissal. Kotowski's statement informed the listener of Wilson's position at the GWCE and that something was occurring there. On its face, neither a positive nor negative inference is suggested by Kotowski's statement; instead it is equally suggestive of both. Under those circumstances, Wilson has not made the requisite "rigorous showing" that the statement constitutes a false suggestion or reflects a misleading omission. See Martin v. Hearst Corp., 777 F.3d 546, 553 (2d Cir. 2015) (finding that defamation by implication claim was not actionable where "the [statements] at issue in [the] case . . . do not imply any fact about [plaintiff] that is not true"). Accordingly, Wilson's claim for defamation against Kotowski is dismissed.

## B. First Amendment Retaliation Claim Against President Gould

Wilson alleges that defendants violated his rights protected by the First Amendment by banning him from the Brooklyn College campus, allegedly in retaliation for a presentation he gave to a New York City council committee that condemned CUNY for racism. (SAC at 10.) The R&R recommended that all of Wilson's retaliation claims under the First Amendment be dismissed because the Second Amended Complaint "does not allege that any individual Defendants knew of the presentation, or that any individual Defendant banned Plaintiff." (R&R at 41.) Wilson contends that it was error to dismiss his claim against President Gould because the "deliberations of the various committees of City Hall are widely disseminated . . . and it is only logical to assume that the President of Brooklyn College would take a keen interest in the

11

proceedings . . . ." (Obj. at 2–3.)

To establish a prima facie claim for First Amendment retaliation, a plaintiff must allege that (i) his speech or conduct was protected by the First Amendment; (ii) he suffered an adverse employment action; and (iii) there was a causal connection between the adverse employment action and the protected speech—specifically, that the protected activity was "at least a substantial or motivating factor" in the adverse employment action. Garcia v. Hartford Police Dep't, 706 F.3d 120, 130 (2d Cir. 2013) (citations omitted); see also, e.g., Matthews v. City of N.Y., 779 F.3d 167, 172 (2d Cir. 2015). Even in circumstances where a plaintiff adequately establishes a causal connection between speech and an adverse employment action, "[i]t is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Warren v. Pataki, 823 F.3d 125, 136 (2d Cir. 2016) ("To establish a section 1983 claim, a plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity."); see also Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).

Although Wilson contends it is "logical" to assume that President Gould knew about his speech given the general dissemination of city hall proceedings to the public, he has not alleged that she—or any other defendant—was aware that he gave a speech before the college barred him from campus. Without allegations plausibly suggesting that any individual defendant knew of Wilson's speech and then participated in the decision to ban him from campus, Wilson has not adequately alleged personal involvement by President Gould or any other defendant. See Monroe v. Gerbing, No. 16-CV-2818 (KMK), 2017 WL 6614625, at *8 (S.D.N.Y. Dec. 27, 2017) ("A plaintiff cannot sustain a claim of retaliation without proving that the defendant knew of the protected conduct."); Gordon v. Marquis, No. 03-CV-1244 (AWT), 2007 WL 987553, at *10 (D.

12

Conn. Mar. 31, 2007) (finding that, in a First Amendment retaliation case, a "causal connection cannot exist if the person allegedly responsible for the adverse action had no knowledge of the protected activity"). Accordingly, Wilson's claim for retaliation under the First Amendment is dismissed.

### C. Equal Protection Claims

Wilson contends that he "has produced numerous facts to establish a theory of 'selective enforcement'" in violation of his rights secured by Fourteenth Amendment. (Obj. at 4.) As the R&R noted, "there appears to be some disagreement within the Circuit as to the definition of the 'similarly situated' standard in 'selective enforcement' cases," Viteritti v. Vill. of Bayville, 918 F. Supp. 2d 126, 135 (E.D.N.Y. 2013), as opposed to "class of one," equal protection claims, see Vassallo v. Lando, 591 F. Supp. 2d 172, 184 n.9 (E.D.N.Y. 2008). Under either standard, however, Wilson must show that he and his comparators were "similarly situated in all material respects, or that a prudent person, looking objectively at the incidents, would think them roughly equivalent." Missere v. Gross, 826 F. Supp. 2d 542, 561 (S.D.N.Y. 2011) (quoting Vassallo v. Lando, 591 F. Supp. 2d 172, 184 (E.D.N.Y. 2008)). "The court must also consider whether the plaintiff and his comparators were 'subject to the same workplace standards' and 'whether the conduct for which the employer imposed discipline was of comparable seriousness.'" Diggs v. Niagara Mohawk Power Corp., 691 F. App'x 41, 43 (2d Cir. 2017) (quoting Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000)). "At a minimum, in order to allow [plaintiff] to make out his prima facie case, a comparator would need to have been [accused of] similar misconduct, attempted to shift blame to others, or lacked any mitigating explanation for his conduct." Jackson v. Rooney, No. 13-CV-1706 (VAB), 2016 WL 4769717, at *11 (D. Conn. Sept. 13, 2016) (citations omitted).

Read in the light most favorable to Wilson, the Second Amended Complaint alleges that two of his white colleagues, Defendants Currah and Robin, lied about Wilson's alleged misconduct, specifically about Wilson changing students' grades, participating in a plagiarism ring, and stealing from CUNY. (SAC at 25, 36.) Wilson alleges that, despite these lies and defamatory statements, CUNY did not punish Currah or Robin. (Id.) He also contends that they were not punished for their illegal search and conversion of his property. (Obj. at 5.) As an initial matter, conduct in furtherance of an investigation into Wilson stealing funds and other misconduct is not materially the same as committing the alleged misconduct. See Butler v. Bridgehampton Fire Dist., No. 14-CV-1429 (JS), 2015 WL 1396442, at *4–5 (E.D.N.Y. Mar. 25, 2015); Vaher v. Town of Orangetown, N.Y., 916 F. Supp. 2d 404, 434 (S.D.N.Y. 2013) (dismissing equal-protection claim because plaintiff did "not allege that he was treated differently from any identified individuals, let alone individuals who he claims were similarly situated to him in any respect"). A prudent person looking at these circumstances would not deem Wilson and his faculty compatriots roughly equivalent because of the wide gap between, on the one hand, allegedly improperly taking funds and other misdeeds, and actions by others in response to that same conduct. See Ruiz v. Cty. of Rockland, 609 F.3d 486, 493–94 (2d Cir. 2010); Jackson, 2016 WL 4769717, at *12 ("No reasonable jury could find that Jones, Cook, or Reed were similarly situated to [plaintiff] because none of them faced similar criminal, or confessed to similar degrees of wrongdoing in their disciplinary proceeding.").

He fares no better by arguing that they are guilty of criminal conduct because they lied about his alleged transgressions. He cannot manufacture comparators by alleging that they engaged in criminal conduct by investigating his purported conduct. His comparators are those that had disciplinary charges sustained by an independent arbitrator. See Rodriguez v. Long Island

<u>Am. Water, Inc.</u>, No. 12-CV-2970 (JFB), 2014 WL 4805021, at *9 (E.D.N.Y. Sept. 26, 2014).
But, Wilson fails to point to others who were found guilty by the College of similar misconduct
and were not discharged. Accordingly, Wilson's Equal Protection claims under the Fourteenth
Amendment are dismissed.

### D. Search & Seizure Claim

Although Wilson contends the R&R "correctly held that Plaintiff's fourth amendment
unlawful search and seizure claim is viable," he takes issue with the R&R's recommendation that
his claim against Frederick Schaffer, CUNY's general counsel, was dismissed for lack of personal
involvement. (Obj. at 5.) He argues this recommendation was error because Schaffer "authorized"
the search of his office. (<u>Id.</u>) Wilson's argument fails because neither the Second Amended
Complaint nor the Third Amended Complaint alleges that Schaffer "authorized" the search of
Wilson's office. Instead, all that it alleges is that Defendant Isaacson supervised the alleged search
of Wilson's office. (SAC at 44.)[1] Consequently, Wilson's Fourth Amendment claim against
Schaffer is dismissed.

*     *     *

After <u>de novo</u> review and upon consideration of Wilson's objections, this Court hereby
adopts, in its entirety, the findings and rationale articulated in the thorough and well-reasoned
R&R.

### II.     Motion to Dismiss Third Amended Complaint

With the exception of the claim for conversion against Defendants Currah and Issacson,
defendants now seek dismissal of the Third Amended Complaint for two reasons. First, they argue

---

[1] The Third Amended Complaint makes no effort to remedy this deficiency because, like the Second
Amended Complaint, it does not allege that Defendant Schaffer "authorized" the search of Wilson's office.
Indeed, Defendant Schaffer goes unmentioned in the Third Amended Complaint's cause of action for the
purported unlawful search. (TAC ¶¶ 69–76.)

that the Third Amended Complaint simply reasserts the same claims and the same factual allegations as the Second Amended Complaint, the majority of which Magistrate Judge Scanlon recommended be dismissed. (Defs. Mem. at 1.) Second, defendants argue that two of the three claims that would remain if this Court adopted the R&R should be dismissed on collateral estoppel grounds. (Id.) Defendants' arguments will be considered in turn below.

## A. Reassertion of Dismissed Claims

The R&R recommended that Wilson be given leave to re-plead some of his claims in a manner consistent with the R&R. (R&R at 69.) Specifically, the R&R stated that Wilson would be permitted to replead his Title VII and ADEA claims if he could demonstrate that he timely exhausted his administrative remedies while also addressing the deficiencies of the factual allegations. (Id.) The R&R also directed Wilson to remedy the factual deficiencies of his claims under the NYSHRL, NYCHRL, § 1983, and common law claims for defamation and intentional infliction of emotional distress. (Id.) For instance, the R&R directed him to adequately plead the personal involvement of many of the defendants for his § 1983 claims. (Id.)

The Third Amended Complaint removed its express causes of action for employment discrimination under Title VII, ADEA, NYSHRL, and NYCHRL. It also omitted causes of action for tortious interference with contract and tampering with his mail.[2] Despite these omissions, the Third Amended Complaint adds no new allegations to correct the deficiencies identified by Magistrate Judge Scanlon in the R&R to Wilson's § 1983 claims, and common law claims for defamation, and intentional infliction of emotional distress. Indeed, Wilson expressly admitted to this Court that the Third Amended Complaint contains "the same" allegations as the Second

---

[2] Even though the R&R did not give Wilson leave to plead his § 1981 claims because it found those claims legally deficient, the Third Amended Complaint nevertheless asserts claims under § 1981 using the same factual allegations. He did not object to the R&R's dismissal of those claims and the R&R contains no clear error. Accordingly, Wilson's § 1981 claims are dismissed.

Amended Complaint and that he neglected to "add anything that fixed the problems [Magistrate Judge Scanlon] raised." (D.E. # 53.) Unsurprisingly, he makes no argument in opposition to defendants' motion as to why these claims should not be dismissed. Therefore, the Third Amended Complaint's claims under §§ 1981, 1983 (except for the Fourth Amendment claim against Defendants Currah and Isaacson), and common law claims for defamation (except for the claim against Defendant Cheng), conversion (except for the claim against Defendants Currah and Issacson) and intentional infliction of emotional distress are dismissed for the same reasons stated by the R&R and adopted herein. To the extent the Third Amended Complaint seeks relief for employment discrimination claims under Title VII, ADEA, the NYSHRL and NYCHRL, those claims are also dismissed because Wilson has failed to remedy the legal and factual deficiencies identified by the R&R.

### B. Collateral Estoppel

Defendants also seek dismissal of two of the three claims sustained by the R&R and reasserted in the Third Amended Complaint: (1) a claim for defamation against Cheng for his purported statement that "Wilson was engaging in criminal activity"; and (2) a claim under the Fourth Amendment against Defendants Currah and Isaacson for unlawful search and seizure. (Defs. Mem. at 3.) Defendants argue that these claims are barred by collateral estoppel because the facts underlying these claims were necessarily decided against Wilson by the arbitrator when the arbitrator upheld CUNY's dismissal of him. (Id. at 3–5.) As explained below, the Court denies defendants' renewed motion because under the precise circumstances of this case, collateral estoppel does not bar Wilson's defamation and search and seizure claims.

"Collateral estoppel bars relitigation of an issue if '(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding;

(3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.' This test does not include a requirement that the parties against whom plaintiffs litigated in the prior proceeding be the same parties they litigate against in the current proceeding." Dundon v. Komansky, 15 F. App'x 27, 29 (2d Cir. 2001) (quoting United States v. Mendoza, 464 U.S. 154, 158 (1984) (giving preclusive effect to findings of facts made in an arbitration hearing)). And, "[i]t is well-settled that the doctrines of res judicata and collateral estoppel can be predicated on arbitration proceedings." Siddiqua v. N.Y. State Dep't of Health, 642 F. App'x 68, 70 (2d Cir. 2016).

Defendants contend that the facts underlying Wilson's claims were litigated before the arbitrator and necessarily decided against him when the arbitrator sustained a majority of the charges against him. (Defs. Mem. at 3.) Defendants' argument is intuitively appealing because the arbitrator considered many factual issues that are relevant to this case. For example, the arbitrator found that the college was justified in terminating Wilson because he had deceived the College by obtaining duplicate reimbursements, (AAA Op. at 44), submitted reimbursements for personal expenses, (id. at 45), and "engaged in serious misconduct" by "receiving additional compensation of over $100,000 to which he could not claim a right to receive," (id. at 49). In a distinction that is not addressed by defendants, "[t]he Supreme Court has explained, however, that the arbitration of related contract-based claims under a collective bargaining agreement does not bar subsequent de novo review of statutory claims in federal court." Siddiqua, 642 F. App'x at 70 (citing Alexander v. Gardner-Denver Co., 415 U.S. 36, 50–54 (1974)). In Gardner-Denver, because "the employees    . . . had not agreed to arbitrate their statutory claims, and the labor arbitrators were not authorized to resolve such claims, the arbitration in those cases . . . was held not to preclude subsequent statutory actions." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S.

20, 35 (1991). In a long line of cases, the Supreme Court has applied Gardner-Denver to hold that arbitrations pursuant to collective bargaining agreements do not preclude subsequent § 1983 actions based on the same facts. See, e.g., McDonald v. City of W. Branch, 466 U.S. 284, 287–88 (1984); see also Claps v. Moliterno Stone Sales, Inc., 819 F. Supp. 141, 154 (D. Conn. 1993) (Cabranes, J.) (finding plaintiff was not estopped from pursuing state law statutory and common law claims that fell outside of arbitration held pursuant to a CBA); Kelly v. Classic Restaurants Corp., No. 01-CV-9345 (GBD), 2003 WL 22052845, at *4 (S.D.N.Y. Sept. 2, 2003) (same). Indeed, "[t]he Court reached the same holding in subsequent cases involving many different laws, each time emphasizing that grievance procedures under collective bargaining agreements protect only contractual rights." Taylor v. N.Y.C. Transit Auth., No. 96-CV-4322 (SS), 1997 WL 620843, at *4 (S.D.N.Y. Oct. 7, 1997) (emphasis added). Moreover, the Second Circuit has stated that "Gardner-Denver does not apply only to claim preclusion. It also prohibits a court from dismissing . . . claims by giving preclusive effect to findings of fact made by the Arbitrator in resolving [plaintiff's] contract claims." Siddiqua, 642 F. App'x at 71.

Here, the foregoing demonstrates that collateral estoppel does not preclude Wilson from relitigating facts underpinning his defamation and search and seizure claims. As was the case in McDonald and Siddiqua, Wilson's contract claims were submitted to the arbitrator pursuant to a collective bargaining agreement, and the arbitrator limited herself to considering whether defendants were justified in their termination of Wilson under that agreement. Indeed, the opinion does not address any non-contractual claims and expressly states that the arbitrator's authority was expressly "granted under the parties' collective bargaining agreement." (AAA at 1.) Moreover, defendants do not argue that the CBA covers defamation claims, § 1983 claims, or any non-contractual claims. Cf. 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 274 (2009) ("We hold that a

collective-bargaining agreement that clearly and unmistakably requires union members to arbitrate [non-contractual] claims is enforceable as a matter of federal law.").

Defendants' argument may have been persuasive if the arbitration was not conducted pursuant to a collective bargaining agreement or if the agreement expressly permitted arbitration of non-contractual claims, but those circumstances are not present here. See Fayer v. Town of Middlebury, 258 F.3d 117, 121 (2d Cir. 2001) (explaining the difference between the line of cases where the "Supreme Court ruled in a series of cases that the determinations of labor arbitrators pursuant to collective bargaining agreements do not preclude subsequent federal actions to vindicate certain federal statutory and constitutional rights" and a "second line of cases [that] dealt with the enforceability of individually executed predispute arbitration agreements on federal statutory and constitutional claims"). Those distinctions doom defendants' argument. The half-dozen cases that defendants rely upon for their contention that "courts in this circuit have dismissed claims based on the preclusive effect of an arbitration award," (Defs. Mem. at 5), are not directly relevant here because none of the arbitrations in those cases was brought pursuant to a collective bargaining agreement or involved claims that could not be asserted in that arbitration. Consequently, defendants' renewed motion to dismiss fails under Gardner-Denver and its progeny.

Lastly, it is also worth noting what the arbitrator did not decide in relation to Wilson's remaining defamation claim. His claim is premised on Defendant Cheng's alleged statement that Wilson was "engaging in criminal activity." (TAC ¶ 16.) The arbitrator, however, made no finding that Wilson had engaged in criminal activity. (See AAA Op.) The fact that the arbitrator found that Wilson had taken funds that his contract did not allow for does not necessarily support a finding that he was engaged in criminal activity.

## CONCLUSION

For these reasons, the Court adopts the R&R. The Court also grants defendants' renewed motion to dismiss with respect to the claims reasserted in the Third Amended Complaint that were dismissed from the Second Amended Complaint. The Court denies defendants' renewed motion to dismiss Wilson's claims for defamation against Defendant Cheng and for search and seizure against Defendants Currah and Isaacson. Accordingly, the claims that will move forward are: (1) search and seizure violation under § 1983 against Defendants Currah and Issacson; (2) conversion against Defendants Currah and Issacson; and (3) defamation against Defendant Cheng.

SO ORDERED.

/s/(CBA)

Dated: March    , 2018
       Brooklyn, New York

Carol Bagley Amon
United States District Judge