UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
DR. JOSEPH WILSON, Ph.D.,                              :
                                                      :
                              Plaintiff,              :
                                                      :        MEMORANDUM & ORDER
        -against-                                     :
                                                      :        15-CV-23 (CBA)(MMH)
TERRENCE CHENG, DR. PAISLEY CURRAH, Ph.D.,:
and MARCIA ISAACSON,                                  :
                                                      :
                              Defendants.             :
-------------------------------------------------------------------x

**MARCIA M. HENRY**, United States Magistrate Judge:

On January 5, 2015, Plaintiff Dr. Joseph Wilson ("Dr. Wilson" or "Plaintiff") a former professor at Brooklyn College, sued Brooklyn College, the City University of New York ("CUNY") and several of its professors and administrators regarding the circumstances of his 2014 termination from Brooklyn College.  (*See generally* Compl., ECF No. 1.)  After dispositive motions eliminated most defendants and claims, the operative Fourth Amended Complaint ("FAC") against the remaining Individual Defendants Terrence Cheng ("Cheng"), Dr. Paisley Currah ("Currah"), and Marcia Isaacson ("Isaacson") (collectively, "Individual Defendants") alleges (1) unlawful search and seizure against Currah and Isaacson, (2) defamation against Cheng, and (3) conversion against Currah and Isaacson.  (*See generally* FAC, ECF No. 129.)

Before the Court are Plaintiff's five discovery requests: (1) leave to subpoena CUNY for information about Plaintiff's computer files; (2) leave to subpoena CUNY for information about the location of boxes from Plaintiff's office at CUNY; (3) a "so ordered" subpoena to the New York State Office of the Attorney General, Public Integrity Bureau (the "OAG") for the investigative file related to an investigation into Plaintiff; (4) a privilege log for any documents Defendants withheld on the basis of privilege; and (5) leave to reopen depositions of Currah and

Isaacson.  (June 18, 2021 Ltr., ECF No. 135; Pl.'s Mot., ECF No. 136.)  For the reasons stated

below, Plaintiff's requests are granted in part and denied in part.

## I.   <u>BACKGROUND</u>

The Court assumes the parties' familiarity with prior proceedings in light of multiple orders

in this case.  *See, e.g.*, *Wilson v. New York*, 15-CV-23 (CBA)(VMS), 2017 WL 9674497 (E.D.N.Y.

Jan. 24, 2017) (Scanlon, *J.*) ("*Wilson I*"), *report and recommendation adopted*, 2018 WL 1466770

(E.D.N.Y. Mar. 26, 2018) (Amon, *J.*) ("*Wilson II*") (orders dismissing most of the claims and

defendants named in the original complaint); Sept. 25, 2020 Order, ECF No. 127 (denying

Plaintiff's motion to supplement pleadings to further amend his claims and add defendants).

### A.  Factual Background

The following information is relevant to the analysis of the pending discovery requests.

As set forth in earlier iterations of the FAC:

> Dr. Wilson was a tenured African-American professor at
> Brooklyn College and brought this action alleging that the college
> and several professors and administrators discriminated against
> him based upon his race and age.  The events in this action arise
> principally out of a disciplinary proceeding college officials brought
> against Wilson concerning actions he allegedly took as the Director
> of the Graduate Center for Worker Education ("GCWE").  The
> college terminated Wilson on the grounds that he unjustly enriched
> himself in an amount of approximately $100,000, used CUNY
> funding for personal purchases, and submitted false and misleading
> documents to the CUNY Provost's office.  After numerous hearings
> pursuant to the parties' collective bargaining agreement ("CBA"),
> including fourteen days of hearings before a neutral arbitrator from
> the American Arbitral Association ("AAA"), CUNY's decision to
> terminate Wilson was upheld on twelve of the fifteen grounds,
> including the most serious charges that Wilson "destroyed the basic
> trust necessary to maintain the employment relationship" by
> "receiv[ing] additional compensation of over $100,000 to which he
> could not claim the right to receive."

> *           *           *

> Wilson contends that the charges in the disciplinary proceedings were false and that his fellow political science professors, as well as high-level administrators at CUNY, knowingly made false allegations and launched the investigation as a subterfuge so they could fire him.  He alleges that defendants did this because he is African-American and those determined to oust him are white.   He also alleges that under the guise of the investigation, defendants conducted an unlawful search of his office, seized his personal property located therein [and] made defamatory statements that he was engaging [in] criminal activity. . . .

*Wilson II*, 2018 WL 1466770, at *2 (internal citations omitted).  Plaintiff's allegations against the

Individual Defendants are as follows:

> Plaintiff specifically alleges that Defendant Currah, who was also a CUNY political science professor and the department's chair, was among those individuals who made false allegations against him, and that CUNY would have otherwise lacked probable cause for the resulting searches and confiscations.  Plaintiff also alleges that these searches and confiscations, which were led by Defendant Isaacson, a CUNY associate counsel and compliance officer, were unreasonable in their scope and further violated his rights.  Plaintiff claims that as a result of Defendant Currah's and Defendant Isaacson's contested actions he has been deprived of his Seized Property and Computer Files for years and/or permanently.  Generally speaking, these allegations form the basis of Plaintiff's remaining federal § 1983 unlawful search and seizure claim and New York conversion claim against Defendants Currah and Isaacson.
>
> Plaintiff also alleges that in 2014, Defendant Cheng, who was an associate CUNY provost, falsely stated that Plaintiff had been "engaging in criminal activity."   Generally speaking, this allegation forms the basis of Plaintiff's New York defamation claim against Defendant Cheng.

(Sept. 25, 2020 Order at 2–3 (citing *Wilson I* and *Wilson II*, *passim*).)

## B.  Procedural Background

The complex procedural background in this case is summarized as follows:

> In January 2015, Plaintiff commenced this action with his Original Complaint and, later that same month, his First Amendment Complaint[.]  In June 2015, Plaintiff filed a Second

3

Amended Complaint ("SAC"), which pleaded more than 15 claims against more than 15 Defendants in connection with his . . . allegations. Defendants moved to dismiss Plaintiff's SAC in its entirety pursuant to Rule 12(b)(6), and this Court issued its report and recommendation ("R&R") dated January 24, 2017, recommending that Defendants' Rule 12(b)(6) motion be granted in part and denied in part. In particular, the R&R recommended that Defendants' Rule 12(b)(6) motion only be denied with respect to (1) Plaintiffs' federal § 1983 unlawful search and seizure claims against Defendants Currah and Isaacson, (2) Plaintiff's conversion claims under New York law against Defendants Currah and Isaacson, and (3) Plaintiff's defamation claim under New York law against Defendant Cheng. The R&R recommended that Defendants' Rule 12(b)(6) motion be granted in all other respects, although it also recommended that Plaintiff be given leave to file an amended pleading to remedy the SAC's factual and procedural deficiencies.

In April 2017, Plaintiff filed a Third Amended [Complaint]. Defendants subsequently renewed their Rule 12(b)(6) motion to dismiss. In District Judge Amon's Order dated March 26, 2018, "adopt[ing] the R&R as the opinion of the Court," all claims and Defendants were dismissed from Plaintiff's action save the three remaining claims against three remaining Defendants as the R&R recommended.

(Sept. 25, 2020 Order at 3–4 (internal citations omitted).) In the September 25, 2020 Order, Judge Scanlon denied Plaintiff's motion to supplement the pleadings and ordered Plaintiff to file the FAC reflecting only the remaining claims and defendants. (*Id.* at 20–21.)

## C. Discovery Disputes Background

In light of the extensive dispositive motion practice, discovery did not begin in earnest until 2018. (*See* June 4, 2018 Minute Entry & Order (setting discovery schedule).) Since then, the parties have submitted multiple discovery disputes for judicial intervention. (*See* Oct. 4, 2018 Order, ECF No. 66 (granting defense motion to compel); Dec. 18, 2018 Order (denying Defendants' motion for sanctions); June 10, 2019 Order #1 (denying most of Plaintiff's discovery requests in part because "Plaintiff has not timely pursued discovery, instead, only propounding

numerous requests and subpoenas in the waning days of discovery."); June 10, 2019 Order #2 (granting Plaintiff's request to substitute experts and closing discovery as of August 22, 2019); July 3, 2019 Order (granted contested motion for an extension of time to complete nonparty depositions); Sept. 6, 2019 Order, ECF No. 93 (granting in part and denying in part defense motion to strike and Plaintiff motion to compel).)

Relevant to the pending discovery disputes, on September 25, 2020, Judge Scanlon ordered the parties to meet and confer regarding any outstanding discovery issues and to file a joint status report regarding the same. (Sept. 25, 2020 Order #2.) On October 20, 2020, the parties filed a joint letter in which Plaintiff identified ten outstanding discovery issues and asked Judge Scanlon, over defense objections, to reopen limited discovery into those ten categories. (Oct. 20, 2020 Ltr., ECF No. 130.) At a hearing on November 4, 2020, Judge Scanlon admonished counsel for the Individual Defendants for frequently invoking the late timing of Plaintiff's requests, rather than addressing substantive objections. (*See, e.g.*, Nov. 4, 2020 Tr., ECF No. 133 at 31:17–20.)

On April 30, 2021, Judge Scanlon denied in part and granted in part Plaintiff's motion to reopen limited discovery. (*See* Apr. 30, 2021 Order.) In sum, she found good cause to reopen limited discovery "due to confusion regarding whether and to what extent Defendants had previously produced responsive discovery in the government's possession and not just the Individual [Defendants']." (*Id.*) Judge Scanlon noted that "[t]he difficulty with Defendants' selective production of responsive discovery in the government's possession in some but not all instances is that it is now unclear what responsive information in the government's possession has not been produced . . . ." (*Id.*)

Judge Scanlon grouped the requested discovery into three categories: (1) materials that Defendants have agreed they will re-produce by renewing an online link previously provided to

Plaintiff but which subsequently expired; (2) materials that were not previously produced in that link; and (3) reopened depositions for Defendants Isaacson and Currah. (*Id.*) She found that the request for category (1) was moot because Defendants had agreed to re-produce the link and that the request for category (2) had been granted on the record at the November 4, 2020 status conference. (*Id.*) With respect to the request to reopen depositions in category (3), Judge Scanlon denied the request with leave to renew while cautioning that "a renewed application should only be made as appropriate after the parties certify the closure of the limited supplemental documentary discovery performed consistent with this Order." (*Id.*) Additionally, with respect to the requested subpoenas to the government entities, Judge Scanlon "urge[d] Defendants to produce the discovery without requiring a subpoena, to the extent that Defendants find that they need one from Plaintiff for certain custodians, Defense Counsel represented on the record that he would accept service of such subpoenas and must timely request them from Plaintiff while providing all necessary information for their issuance." (*Id.*) She also ordered the parties to file a status report certifying the close of discovery or identifying any remaining issues. (*Id.*)

### D.  The Pending Discovery Disputes[1]

Pursuant to the April 30, 2021 Order, the parties filed a status report on June 18, 2021 identifying the following outstanding discovery issues, all of which are Plaintiff's requests: (1) leave to subpoena CUNY for information about Plaintiff's computer files; (2) leave to subpoena CUNY for information about the location of boxes from Plaintiff's office at CUNY; (3) a "so ordered" subpoena to the OAG for the investigative file related to Plaintiff; (4) a privilege log for any documents Defendants withheld on the basis of privilege; and (5) leave to reopen depositions of Currah and Isaacson. (June 18, 2021 Ltr. ("Status Report"), ECF No. 135.)

---

[1] The case was reassigned to me on June 16, 2021.

Defendants objected to any further discovery and requested to proceed to summary judgment briefing.  (*Id.* at 2–4.)

On August 3, 2021, I held a conference to discuss the discovery issues raised in the Status Report.  (*See* Aug. 3, 2021 Minute Entry & Order; *see also* Aug. 3, 2021 Tr. ("Tr."), ECF No. 139.)  I reserved decision except as to the request to reopen depositions, which I denied with leave to renew.  (Tr. 47:20–48:2.)  I also ordered additional briefing on the request to "so order" a subpoena for the OAG investigative file.  (*Id*. 35:18–36:1.)  The motion was fully briefed as of September 21, 2021.  (Pl.'s Mot., ECF No. 136; Defs.' Opp'n., ECF No. 138.)

## II.   DISCUSSION

### A.  Legal Standard

"Relevance under Rule 26 'has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'"  *BD Dev., LLC v. Loc. 79, Laborers Int'l Union of N. Am.*, No. CV 14-4876 (JS)(AKT), 2016 WL 402381, at *1 (E.D.N.Y. Jan. 15, 2016) (internal citation omitted) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *New Falls Corp. v. Soni*, No. 16-CV-6805 (ADS)(AKT), 2020 WL 2836787, at *1 (E.D.N.Y. May 29, 2020) (Rule 26(b) "is liberally construed and is necessarily broad in scope.") (citation omitted).  Stated differently, "[i]nformation is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  *N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*, 325 F.R.D. 36, 47 (E.D.N.Y. 2018).

However, "[a] district court has broad latitude to determine the scope of discovery and to manage the discovery process."  *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012).  In fact, "[a] court may place limits on discovery demands that are unreasonably cumulative

or duplicative." *Vaigasi v. Solow Mgmt. Corp.*, No. 11-Civ-5088 (RMB)(HBP), 2016 WL 616386, at *17 (S.D.N.Y. Feb. 16, 2016) (citation omitted). Specifically, courts impose limits on discovery when: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

### B. Plaintiff's Computer Files

Plaintiff requests leave to subpoena CUNY for information about Plaintiff's computer files "in an attempt to clarify what electronic files are in the possession of CUNY." (Status Report at 2.) Plaintiff stated that he received three productions of his computer files from CUNY: (1) in January 2019, an index listing 6,100 files; (2) in October 2019, a USB drive containing 40,000 files from all three of Plaintiff's computers, of which 35,000 were from the GCWE computer; and (3) at an unspecified date, a hard drive from the GCWE computer. (*Id.* at 2; *see also* Tr. 24:1–7.) At the August 3, 2021 hearing, counsel for Plaintiff clarified that in December 2020, he received a hard drive that Defendants claimed contained Dr. Wilson's computer files. (Tr. 18:20–22.) In January 2021, Plaintiff advised counsel for the Individual Defendants that he could not access the files on the hard drive, in part because the hard drive included copies of the entire operating system, making the files very difficult to review. (*Id.* 18:22–19:10.) Counsel for the Individual Defendants asked CUNY to provide a new hard drive in March 2021, for which Plaintiff's counsel acknowledged receipt.[2] (*Id.* 19:11–15; 20:19–24.) However, counsel for Plaintiff insists that the

---

[2] At this point, CUNY was no longer a defendant in the case. *See generally Wilson I* and *Wilson II*.

data in the USB from October 2019 and the hard drive from March 2021 did not align (*i.e.*, the former contains 35,000 files while the latter has only approximately 6,000 files). (*Id*. 24:1–14.) Plaintiff now intends to directly subpoena CUNY (rather than making the request to the Individual Defendants) to reproduce the hard drive to understand the discrepancy between the two previously produced hard drives. (*Id*. 22:12–17.)

Defendants maintain that "there is no basis whatsoever for permitting Plaintiff at this late stage to subpoena anyone at CUNY to testify about the contents of the hard drive" because Plaintiff has not timely pursued this discovery, either before the prior discovery deadlines or after receiving the re-produced hard drive in March 2021. (Status Report at 8; Tr. 21:12–17.)

Plaintiff's contention that he needs a subpoena to confirm the discrepancy between the number of files in the two hard drives is without merit. Counsel admitted that he was unable to review the hard drive from December 2020 because it contained extraneous files related to Dr. Wilson's operating system. (*Id*. 18:22–19:10.) The second hard drive produced in March 2021 purportedly contained the correct files that Plaintiff had requested, and more closely matched the number of files in the index produced in January 2019. In other words, it makes sense that the December 2020 hard drive, with admittedly extraneous information, would contain more files than the corrected hard drive that was produced in March 2021. Further, at the August 3, 2021 conference, counsel for Defendants stated that after the issue was identified in the Status Report, he spoke with CUNY's Computer Information Services, who confirmed that all of Dr. Wilson's computer files have been produced to Plaintiff. (*Id*. 13:25–14:16, 20:19–24.) A subpoena to obtain these records is duplicative when the records have already been provided and Defendants have confirmed that there are no further records to be produced. *See* Fed. R. Civ. P. 26(b)(2)(C)(i); *New Falls Corp.*, 2021 WL 878742 at *4 ("[C]ourts may deny motions to compel because they are

overbroad, vague, or duplicative."). Accordingly, Plaintiff's request for a subpoena to obtain Dr. Wilson's computer files is denied.

### C.  Boxes from Plaintiff's Office

Plaintiff also requests leave to subpoena CUNY to identify any further information about the location of 22 boxes that were recovered from Plaintiff's CUNY office and whether Plaintiff can access them (as they constitute his personal property and are relevant to his conversion claim). (Status Report at 3; Tr. 25:16–19, 26:6–11.)  Plaintiff's counsel argue that they learned of the existence of these boxes from an email contained in a June 4, 2021 supplemental production of documents.  (*Id.* 25:22–23.)  That email stated that the boxes had been delivered to Plaintiff's office.  (*Id.* 25:22–25.)  Accordingly, Plaintiff argues that because he was banned from his office by Defendants, Defendants should be able to tell Plaintiff where those boxes currently are. (*Id.* 26:1–26:3.)  They claim that any delay in requesting these boxes is because Defendants continued to supplement their document productions despite claiming that each production was final.  (*Id.* 27:22–28:9.)

Defendants, on the other hand, assert that they are "not aware of any other documents relating to these purported 22 boxes of documents" and that there is "no basis for any further discovery of non-party CUNY. . . ."  (Status Report at 8.)  Specifically, counsel for Defendants claims that the supplemental productions were from CUNY, not the three remaining Individual Defendants, and reiterates that Plaintiff did not timely request these boxes.  (Tr. 29:7–15, 32:1–9.) Counsel for Defendants also noted that the email referencing the 22 boxes was actually sent to Plaintiff in April 2020, indicating that Plaintiff should have known about the existence of these boxes prior to the Status Report and should have requested them earlier.  (*Id.* 30:2–21.)  Despite counsel for Defendants' assertion that he does not represent CUNY, he also noted on the record

that he has been facilitating the production of records from CUNY because he was directed to do so by Judge Scanlon's Order.  (*Id.* 31:23–24.)

Plaintiff is permitted to subpoena CUNY regarding the location or the actual contents of the 22 boxes from his office.  Defendants' timeliness arguments are entirely without merit given that Judge Scanlon explicitly reopened discovery to address these outstanding items of discovery. (*See* Apr. 30, 2021 Order.)   Moreover, Judge Scanlon has already admonished counsel for Defendants that "selective production of responsive discovery in the government's possession in some but not all instances" created confusion as to "what responsive information in the government's possession has not been produced."  (*Id.*)

> Defendants oppose Plaintiff's request to reopen limited discovery by taking the position that they have only ever been obligated to produce discovery in the possession of three Individual Defendants and that they have never been obligated to produce discovery in the government's possession without a subpoena.  *See, e.g.*, ECF No. 126 at 10:9-14:4-14; ECF No. 130 at 3 (Defendants raising an objection to their obligation to produce responsive discovery in the possession of non-parties without a subpoena, including CUNY or the OAG [Public Integrity Bureau]).   It was not the Court's understanding during its supervision of discovery that Defendants were selectively producing material in the government's possession at times but not others; for example, Defendants made suggestions to the Court that discovery produced included materials in the government['s] possession.  *See, e.g.*, ECF No. 123 at 15:14-16:15 (Defendants' counsel stating that he would make inquiries at CUNY with respect to a request to access Plaintiff's computer to look for documents, and the Court's instruction that the parties confer regarding the performance of electronic discovery on computers in CUNYs possession); ECF No. 126 at 4:15-9:16 (Defendants' counsel representing to the Court in September 2020 his recent efforts to locate certain materials in CUNY['s] possession and the Court expressing surprise because it had believed that CUNY had been searching for the materials throughout litigation).

(Apr. 30, 2021 Order.)  Given the lack of clarity regarding the records that have been produced in this case and which custodians have produced material in this action, Plaintiff's request for a subpoena to CUNY for information about the 22 boxes is granted.

### D.  OAG Investigative File

Plaintiff requests leave to subpoena OAG for its investigative file on Dr. Wilson and attaches a proposed subpoena for approval.  (Pl.'s Mot., ECF No. 136 at 1; *see also* Pl.'s Mot. Ex. A, ECF No. 136-1.)  Plaintiff argues that the OAG investigative file is relevant because the information "will determine which legal standard applies to Plaintiff's search and seizure claim, and whether the elements of Plaintiff's claim are satisfied under whatever standard applies."  (Pl.'s Mot., ECF No. 136 at 3.)  Essentially, Plaintiff argues that whether the search was conducted at the request of law enforcement sets the standard of reasonableness for Defendants Currah and Isaacson's alleged conduct.  (*Id.*)  Plaintiff argues that it can overcome any law enforcement privilege that may attach to the investigative file.  (*Id.* at 2–3.)

Defendants argue that Plaintiff did not timely seek the information and that the information is not relevant to Plaintiff's claims.  (Defs.' Opp'n, ECF No. 138 at 1.)  According to Defendants, the OAG investigative file is not relevant because the search at issue in the FAC is the January 2012 search of Dr. Wilson's office by CUNY, which Plaintiff alleges was conducted without informing the OAG.  (Defs.' Opp'n., ECF No. 138 at 2–3.)  At the August 3, 2021 conference, counsel for Defendants also asserted that Plaintiff was "seeking documents that are subject to the law enforcement privilege and a work product doctrine."  (Tr. 33:5–7.)

As a threshold matter, a Rule 45 subpoena issued to a non-party must comply with Rule 26(b)'s "overriding relevance requirement."  *Warnke v. CVS Corp.*, 265 F.R.D. 64, 66 (E.D.N.Y. 2010) (citing *Ireh v. Nassau Univ. Med. Ctr.*, No. CV-06-09 (LDW)(AKT), 2008 WL 4283344, at

*5 (E.D.N.Y. Sept. 17, 2008)).  Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."  Fed. R. Civ. P. 26(b)(1).  "The party seeking discovery must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition."  *Mamakos v. United Airlines, Inc.*, No. 14-CV-7294 (JFB)(AKT), 2018 WL 4861392, at *2 (E.D.N.Y. Sept. 28, 2018) (quotation, citation, and alteration omitted).  Once this showing has been made, the burden shifts to the responding party "to justify curtailing discovery."  *New Falls Corp.*, 2020 WL 2836787 at *2 (quotation and citation omitted); *Winfield v. City of New York*, No. 15-CV-05236 (LTS)(KHP), 2018 WL 716013, at *4 (S.D.N.Y. Feb. 1, 2018) ("The party seeking discovery bears the initial burden of proving the discovery is relevant, and then the party withholding discovery on the grounds of burden, expense, privilege, or work product bears the burden of proving the discovery is in fact privileged or work product, unduly burdensome and/or expensive.").

The Court need not address any privilege claims because Plaintiff fails to make the requisite showing of relevance with respect to the OAG investigative file.  *See Benitez v. Lopez*, No. 17-CV-3827 (SJ)(SJB), 2019 WL 1578167, at *2 (E.D.N.Y. Mar. 14, 2019) (denying a motion to compel when movant had not demonstrated the relevance of discovery sought).  As a threshold matter, Judge Scanlon limited the reopened discovery to "trial-bound claims as to which the parties have not yet litigated final pretrial matters."  (Apr. 30, 2021 Order.)  The FAC, which contains the only trial-bound claims remaining in the case, alleges with respect to the unlawful search and seizure claim against Defendants Currah and Isaacson: that (1) "in approximately January 2012, CUNY raided Plaintiff's office at the GCWE," and more specifically, that "security personnel, under the supervision of Defendant Isaacson, CUNY Senior Associate Counsel and Chief

Investigator, conducted a warrantless search of Plaintiff's office"; and (2) Defendants "violated the law by not notifying the New York State Office of Inspector General [of the search] as required under New York State law." (FAC, ECF No. 129 ¶¶ 49, 55–56.) As to the OAG investigation into Dr. Wilson, the FAC alleges that "[i]n spring of 2012, Brooklyn College filed charges against Plaintiff with the New York Attorney General." (*Id.* ¶ 49.) In other words, Plaintiff expressly alleges that the OAG's investigation initiated *after* the search of Plaintiff's office. Accordingly, the OAG investigative file has no bearing on the reasonableness of Currah's and Isaacson's search in January 2012, a few months before the investigation. Therefore, Plaintiff's request to subpoena the OAG investigative file is denied.

### E. Privilege Log

Plaintiff asks the Court to compel production of a privilege log by Defendants, which Plaintiff maintains has never been provided. (Status Report at 3.) Plaintiff argues that at a June 17, 2021 meet and confer, Defendants represented that certain documents had been withheld on the basis of privilege and that Defendants agreed to produce a categorical privilege log. (*Id.*) At that time, Plaintiff objected to the production of a categorical log, and instead argued that "[he] is entitled to a complete privilege log." (*Id.* at 4.)

Defendants argue that the demand for a privilege log is "belated," and that Plaintiff is asking for a privilege log with respect to "documents that Plaintiff never timely sought before the March 22, 2019 discovery deadline." (*Id.* at 9.) Defendants also maintain that Plaintiff did not serve any written discovery requests on Defendants until February 22, 2019, close to the end of the then existing discovery deadline. (*Id.* at 10.) Defendants apparently responded to these requests by stating that they were "excessive" and "not proportional to the needs of the case." (*Id.*)

Defendants did not address whether they had agreed to produce a categorical privilege log at the June 17, 2021 meet and confer.  (*See id.* at 9–11.)

"The party asserting a protection or privilege must not only sufficiently assert the basis therefor[e], but must also timely produce a privilege log."  *Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 235 (E.D.N.Y. 2007).  Indeed, the Federal Rules make clear that:

> [w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A).  The local rules similarly require that party declining to provide information on the basis of privilege furnish a written privilege log:

> Where a claim of privilege is asserted in response to discovery or disclosure other than a deposition, and information is not provided on the basis of such assertion, the information set forth in paragraph (a) above [*i.e.*, specific details about the withheld materials] shall be furnished in writing at the time of the response to such discovery or disclosure, unless otherwise ordered by the Court.

E.D.N.Y. Local R. 26.2(b).

Defendants have provided no cogent reason for why a privilege log was not provided in this case.  At the August 3, 2021 conference, Defendants stated that Plaintiff is asking Defendants "to provide a privilege log with respect to a document request that was never made."  (Tr. 40:18–22.)[3]  But counsel for Defendants provided conflicting responses when asked directly whether any documents were actually withheld on the basis of privilege and instead relied on arguments about the timeliness of the requests.  (*See id*. 40:3–8.)  For example, counsel for Defendants said that "in

---

[3] In contrast, Plaintiff maintains that in February 2019, one month before the close of discovery, Plaintiff responded to defense objections regarding the previous discovery requests and requested a privilege log for any documents withheld on the basis of privilege.  (Tr. 44:11–23.)

terms of the document requests *that were requested of the [I]ndividual Defendants and served in June 2018*, we didn't withhold any documents on the basis of privilege." (*Id.* 41:10–15 (emphasis added); *see also id.* 46:5–11 (restating that the Individual Defendants did not withhold privileged documents).)  However, counsel for Defendants also stated that CUNY and other defendants no longer in the case (but represented by the OAG) likely withheld documents on the basis of privilege. (*Id.* 43:22–25.)  According to Plaintiff, counsel for Defendants also represented during a meet and confer, in response to Plaintiff's request for a privilege log, that there probably were documents that had been withheld. (*Id.* 44:24–45:19.)

These statements leave an open question as to whether documents in the possession of CUNY or the other parties dismissed from the case previously were withheld on the basis of privilege.  Indeed, they are emblematic of the "confusion regarding whether and to what extent Defendants had previously produced responsive discovery in the government's possession and not just the Individual [Defendants']." (Apr. 30, 2021 Order).

Plaintiff is correct that if any documents were withheld on the basis of privilege, Defendants have an affirmative obligation under the federal rules to so state and to provide a log. *See* Fed. R. Civ. P. 26(b)(5) ("When *a party* withholds information otherwise discoverable by claiming that the information is privileged . . . *the party* must . . . describe the nature of the [materials] not produced or disclosed[.]") (emphasis added).  It is not Plaintiff's obligation to track whether documents were withheld on the basis of privilege and request a log from Defendants. Instead, if Defendants, *at any point in this litigation*, asserted privilege and withheld documents on that basis, they were obligated to provide an affirmative statement of the same and a privilege log.  Again, this issue appears to arise from the "selective production of responsive discovery in the government's possession in some but not all instances." (Apr. 30, 2021 Order.)

Accordingly, Plaintiff's request for a privilege log is granted.  Defendants shall provide an affirmative statement to Plaintiff in writing of whether any documents were withheld on the basis of privilege (at any point in this litigation by any Defendant represented by the OAG), and if so, provide a full privilege log.

### F.  Depositions of Currah and Isaacson

While Plaintiff does not offer arguments justifying reopening the depositions of Currah and Isaacson, he "reserves the right to renew the request" pending resolution of the issues discussed in the Status Report.  (Status Report at 4.)  Defendants argue that no additional depositions are needed and any requests for same are untimely.  (*Id.* at 11.)

For substantially the same reasons as stated at the August 3, 2021 status conference, Plaintiff's request to reopen the depositions of Currah and Isaacson is denied with leave to renew. Only after the parties have certified the close of the limited discovery will the Court consider such a request.  (*See* Apr. 30, 2021 Order.)

## III.   <u>CONCLUSION</u>

In summary, the five outstanding discovery requests outlined in the parties' June 18, 2021 joint status report at ECF No. 135 are decided as follows:

(1) **Plaintiff's Computer Files**:  Plaintiff's request for leave to subpoena CUNY to obtain a third production of Dr. Wilson's computer files is **denied**.

(2) **Boxes from Plaintiff's Office:** Plaintiff's request for leave to subpoena CUNY to produce information relating to the unaccounted for 22 boxes is **granted**.  Plaintiff shall submit a proposed subpoena for the Court to "so order" by **April 10, 2022**.  If Plaintiff fails to comply with this deadline, he is precluded from seeking the subpoena.

(3) **OAG Investigative File**:  Plaintiff's request for leave to subpoena the OAG for the investigative file relating to the search of Dr. Wilson's office at Brooklyn College (*see* ECF No. 136) is **denied**.

**(4) Privilege Log**:  Plaintiff's motion to compel Defendants to produce a privilege log is **granted**.  Defendants shall provide an affirmative statement to Plaintiff in writing of whether any documents were withheld on the basis of privilege (at any point in this litigation by any defendant represented by the OAG), and if so, provide a full privilege log, by **April 21, 2022.**

**(5) Depositions of Currah and Isaacson**: Plaintiff request to reopen the depositions of Currah and Isaacson is **denied** with leave to renew.

In light of the above rulings, the Court *sua sponte* extends the deadline to complete the above-listed limited discovery to **June 1, 2022**, with a joint status report (not to exceed three pages) due the same day certifying that the limited discovery has closed.  The parties shall meet and confer in good faith and shall cooperate to complete the limited outstanding discovery in this case.  Fed. R. Civ. P. 37(a)(1); E.D.N.Y. Local R. 37.3(a); M. Henry Individual Practice Rule § V.B.

**SO ORDERED.**

Brooklyn, New York
March 31, 2022

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge